No. 37,971

Mazie DeWitt, *Appellant*, v. Wallace A. DeWitt, *Appellee.*

(223 P. 2d 970)

Opinion filed November 10, 1950.

*Robert L. NeSmith*, of Wichita, argued the cause, and *Harold Irwin*, of Wichita, and *Thomas L. McGuire*, of Medicine Lodge, were with him on the briefs for the appellant.

*Riley W. MacGregor*, of Medicine Lodge, argued the cause, and *Vernon F. Coss*, of Medicine Lodge, was with him on the briefs for the appellee.

The opinion of the court was delivered by

Parker, J.: This is an action for a divorce and division of property. The trial court granted a divorce to the plaintiff wife, awarded her permanent alimony in the sum of $1,000 and made a division of the property. She appeals from the order of the trial court respecting the alimony and property matters.

The parties were married on December 20, 1924, and have no children. At the time of the marriage plaintiff had personal property worth $2,100 and the defendant personal property of the approximate value of $3,000. They occupied the same home until the filing of the petition for a divorce in 1949, but it can be said that almost from the start they lived together in a state of armed neutrality. Throughout all the years they lived on a farm. Up until 1936 there was some coöperation between them, at least so far as their business affairs were concerned, and the proceeds realized from crops, livestock and produce raised on a rented farm were for the most part put in a common fund and used for their mutual benefit. However, as the years went by their marital disagreements became more pronounced. In 1936 it appears their relations became so strained they entered into some sort of arrangement, although at that time they owned no real estate and very little personal property, that so far as their busi-

ness and monetary affairs were concerned each would pursue his separate way. Some sort of division was made between them as to the property they had jointly acquired up to that date. Thereafter the defendant farmed the rented land on which the parties were living and raised crops, cattle, hogs and other live-stock. The plaintiff raised cattle and other livestock, also turkeys and chickens. If the plaintiff needed feed for her operations she purchased it on the open market or from the defendant at the market price. If the defendant desired feed he bought it on the market or purchased it from the plaintiff if she had more than she needed. If either of the parties rendered a service for the other a charge was made therefor and paid in due time. Plain-tiff placed the profits derived from her business operations in a separate bank account. Defendant did likewise. Strangely enough both plaintiff and defendant seemed to prosper under this un-usual arrangement and in the succeeding years each, in his own name, acquired title to considerable real estate and held the title thereto on the date of the trial of the divorce action.

In 1942 plaintiff was able to buy and pay for a tract of land located in Barber county, hereinafter referred to as the "Farmer" farm; defendant in 1942, out of money realized from his operations, managed to buy and pay for some land in Clark county, herein-after referred to as the Clark county land; sometime between 1942 and 1946 plaintiff inherited eighty acres of land in Barber county from her parents, hereinafter referred to as Mazie DeWitt Barber county land; in 1946, with money realized from her busi-ness operations and from sale of crops on the Farmer land and the farm she had inherited from her parents, plaintiff purchased and paid for another piece of land in Barber county, hereafter referred to as the Yoke land; meanwhile, with moneys received from his business operations, including the proceeds of crops sold from the Clark county land, defendant purchased and paid for the farm in Barber county which the parties had rented and lived on for many years, hereinafter referred to as the Wallace DeWitt Barber county land; sometime in 1946 or 1947 plaintiff acquired title to 200 acres of land located in Barber county under the will of Charles Hartley, a gentleman of her acquaintance with whom she had become very friendly in the immediate preceding years. Hereinafter this land will be referred to as the Hartley land.

The record before us discloses no conflict in the evidence regard-

ing the market value of any of the foregoing real estate at the time of the trial. The only testimony available is that of the plaintiff who fixed the market value of such tracts of land as follows: The Farmer farm $10,000; the Clark county land $10,000; the Yoke land $6,000; the Wallace DeWitt Barber county land $7,000; the Maizie DeWitt Barber county land and the Hartley land, valued together, $14,000.

In addition to the real estate heretofore mentioned each of the parties had acquired and, on the date of the trial, claimed to own considerable personal property. Plaintiff admitted her personal assets amounted to $18,110. She claimed that in acquiring them she had expended $8,110 in money obtained from her personal business operations and $10,000 in cash which she had received as a gift from her friend, Charles Hartley, in his lifetime. Defendant admitted he had similar assets worth approximately $13,000. He claimed $9,300 he had inherited from his parents had been used in accumulating them. Plaintiff claimed defendant had assets of this character amounting to $21,161.13. As we read the record, viewed in the light of the evidence most favorable to plaintiff's claim, they could not have exceeded $18,611.13.

At the close of the trial, with evidence disclosing a factual situation such as has been heretofore outlined, the district judge censored both parties for their conduct during the existence of the marriage, stating that to make a long story short he could and perhaps should find they were in equal wrong and deny a divorce. Finally, however, he granted plaintiff the divorce with the statement he realized both plaintiff and defendant were too old to be reformed and that he was certain they would never live together again. He then took up the question of a division of their property. He stated he believed it should be left as the parties had divided it up between themselves over the long period of years they had been married and that he thought the fair thing to do was to carry out the arrangement and understanding they had had between themselves during that period of time. Thereupon he awarded plaintiff the Mazie DeWitt Barber county land and the Hartley land as property that she had separately acquired during the marriage. He then gave her the Farmer farm and the Yoke land on the theory that although both tracts had been jointly acquired they nevertheless belonged to her under the working arrangement and agreement between the parties. Then, on the

same theory, he awarded the defendant the Wallace DeWitt Barber county land and the Clark county land. That disposed of the real property. When he came to a division of the personal assets, to which we have heretofore referred, he pointed out how they had been acquired, again commented upon the understanding and agreement, and awarded all such property standing in the plaintiff's name to her and all such as stood in the defendant's name to him. He also made division between them of other personal property, not heretofore specifically mentioned, such as household effects, et cetera, directed that each of the parties pay his own attorneys' fees, and taxed the costs to the defendant.

Upon rendition of judgment in accord with the foregoing findings and conclusions the plaintiff filed a motion for new trial, the only points urged being error in the denial of alimony and in the division of property. After a hearing on this motion the court modified its original judgment by allowing plaintiff the sum of $1,000 as alimony. Plaintiff then perfected this appeal.

Appellant devotes much space in her briefs to statements made by the trial court in announcing its decision, and findings in the judgment itself, respecting how the p r o p e r t y belonging to the parties was acquired and who was the actual owner thereof. Conceding there seems to be some confusion in the findings as to what property was separately acquired and what was jointly acquired we are not disposed, in view of the fact its ultimate decision makes such questions of little consequence, to labor those contentions. Heretofore we have detailed the trial court's views and reasons for its decision. What it actually did was to divide the property, both real and personal, in accord with the long established plan and arrangement of the parties on the theory they had entered into what was tantamount to a postnuptial agreement. It is true, as appellant points out, the evidence as to the express terms of that initial agreement was not any too definite or conclusive. Nevertheless the record makes it crystal clear that from the date they first entered into their agreement to go their separate ways both parties, by subsequent action and conduct, repeatedly evidenced their complete understanding of and ratified the terms of an agreement which were just as definite and certain as if they had been spelled out at length and placed upon paper. Those terms were that following the agreement each was to have and hold as his or her own whatever property he or she might there-

after acquire, regardless of the source or manner of its acquisition. That, except for minor items of personalty to which we shall presently refer, was just what the trial court gave them. Under such conditions and circumstances and others set forth in the opinion we cannot say it erred in awarding the major portion of the involved property in accord with the terms of a subsisting postnuptial agreement between the parties even though it had never been reduced to writing.

Having approved the trial court's action in awarding property acquired under terms of their postnuptial· agreement the record really presents only two more questions for consideration. They can be stated thus: (1) Did such court err in its allowance of alimony and its division of minor items of p e r s o n a l property which by their very nature could not be properly considered as covered by the terms of their agreement? (2) Was its order requiring each party to pay his own attorneys' fees erroneous?

In approaching a decision of the first question, to which we have heretofore referred, it can be said without fear of contradiction the established rule in this jurisdiction is that when a divorce is granted a wife by reason of the fault of the husband an allowance of alimony or division of property made by the trial court rests in its sound discretion and will not be disturbed on appellate review unless it clearly appears from the record that it failed to exercise or abused that discretion. *(Forrey v. Forrey,* 167 Kan. 77, 204 P. 2d 725; *Stanton v. Stanton,* 166 Kan. 386, 201 P. 2d 1076; *Walno v. Walno,* 164 Kan. 620, 192 P. 2d 165; *Mann v. Mann,* 136 Kan. 331, 15 P. 2d 478.)

When boiled down appellant's contention on this point seems to be, that under our decisions, she is entitled to have set aside to her all property that she had separately acquired, regardless of its amount, and after that is entitled to have set off to her one-half of the appellee's property regardless of the existing factual situation. That sort of a claim was definitely rejected in *Walno v. Walno,* supra, where it is said:

". . . If that (referring to a similar contention) were an unvarying standard, there would be no room for exercise of discretion by the trial court. In making the argument appellant overlooks the fact that in each case relied upon by her the divorce was granted by reason of the fault of the husband, while in the instant case the trial court found the parties to be in equal wrong. The Mann case, *supra,* makes it clear that the trial court is to take into con-

sideration the conduct of the parties, the needs of the wife, the earning capacity of the husband, the amount of property and how and when it was acquired. We cannot agree with appellant's contention that the trial court entertained the view that it could not take into consideration the farm which appellee received from his father. . . ." (p. 625.)

In what is probably our most recent decision on the subject (*Carlat v. Carlat*, 168 Kan. 600, 215 P. 2d 200) we referred to the rule on appellate review and the matters to be considered by this court in determining whether the trial court had abused its judicial discretion. At page 602 of the opinion we cited numerous decisions and said:

"There is no hard and fast rule in this jurisdiction for determining the amount of an alimony award where a wife is granted a divorce for the fault of her husband. Generally speaking it can be said to depend upon the facts disclosed by the evidence in the particular case involved. However, it is true we have repeatedly held that in fixing its amount a trial court is required to take into consideration the conduct of the parties, the needs of the wife, the earning capacity of the husband, the amount of property owned by the parties and, under certain conditions not here involved, how and when that property was acquired. . . ."

Reviewing the record we think it is clear the trial court was fully cognizant of the fact that under the terms of the postnuptial contract it had just awarded the appellant property which, in the light of the evidence most favorable to her, was worth $48,110, while the appellee had only been awarded property worth $36,611, a difference of some $12,500. It was also aware, since the parties had agreed between themselves that property was to be divided as it had divided it and considered as separately owned, that the agreement was to be given full force and effect if that could be done under provisions of the statute (G. S. 1947 Supp. 60-1511) and our decisions requiring the allowance of reasonable alimony in a case where the wife had been granted a divorce for the fault of the husband. It then, in compliance with the applicable rule, gave consideration to the conduct of the parties, the needs of the wife, the amount of the property, the probable earning power of the husband and the conditions under which all property involved had been acquired, and decided that when they were all considered together an allowance of $1,000 to the wife would be reasonable as alimony and that such remaining household effects and personal property as were not covered by the terms of the postnuptial agreement should be divided as equally as possible between them. In the light of the unusual situation

disclosed by the record we are unwilling to say appellant has clearly made it appear this action of the trial court was so unreasonable, unjust and inadequate as to constitute abuse of discretion or hold there is any error in the record which requires a reversal of the judgment.

Appellant's complaint that the trial court's action in requiring her to pay her own attorneys' fees is erroneous requires little attention. The statute G. S. 1935, 60-1507, provides "the court may require the husband to pay such reasonable expenses of the wife in the prosecution or defense of the action as may be just and proper, considering the respective parties and the means and property of each." Doubtless the trial court reached the conclusion appellant was just as able financially, if not more so, to pay her attorneys' fees as appellee and that she should do so. As recently as *Thompson v. Thompson*, 168 Kan. 450, 213 P. 2d 641, we held the foregoing provisions of the statute gave the trial court broad discretion in determining whether it would allow attorneys' fees in a divorce proceeding and that its action with respect thereto would never be disturbed on appellate review in the absence of a clear and convincing showing of abuse of discretion.

The judgment is affirmed.