No. 28,202.

W. R. Lesher, *Appellee*, v. The Carbon Coal Company, *Appellant*.

(272 Pac. 155.)

Opinion filed December 8, 1928.

*C. O. Pingry, P. E. Nulton, G. L. Stevenson,* all of Pittsburg, *A. H. Skidmore* and *C. B. Skidmore,* both of Columbus, for the appellant.

*A. L. Majors,* of Columbus, and *E. B. Morgan,* of Galena, for the appellee.

The opinion of the court was delivered by

Hutchison, J.: This is an appeal by defendant from an order overruling a motion for judgment on special findings and rendering a judgment for plaintiff on the general verdict.

The defendant coal company commenced the operation of a strip mine in the fall of 1925 near a farm of about 100 acres belonging to the plaintiff. On March 1, 1926, the plaintiff commenced this action against the defendant for $3,000 damages to his farm, alleging in substance that the defendant, in the operation of its mine, caused the drainage of mineral water from its mine to flow upon the land of the plaintiff; that the water was harmful and poisonous to the stock, to the land and to the rain and pond water; and further—

"That as a result of the defendant discharging the mine water upon the land of the plaintiff, as above alleged, the meadows and farm land of the plaintiff is destroyed and rendered sterile and useless; that a ravine running across plaintiff's said land is made wet and soggy, so as to prevent the plaintiff from going from one side of the farm to the other for the purpose of carrying on farming and looking after his said farm; that the water in said ravine is poisonous and polluted, preventing the plaintiff from maintaining or building a necessary pond to water plaintiff's stock."

The issues were joined by answer in the nature of a general denial, and the cause was tried to a jury, which rendered the following general verdict and answers to questions propounded by the defendant:

"We, the jury impaneled and sworn to try the issues herein joined, find in favor of the plaintiff and against the defendant; and we assess as the amount of plaintiff's recovery herein, the sum of $1,000."

"1. Did the water from defendant's strip mine flow upon and through plaintiff's land through a natural watercourse? A. No.

"2. If you answer the above question in the affirmative, then state how long said watercourse had existed. A. ———.

"3. What do you find was the fair market value of plaintiff's premises per acre in 1925? A. $40 per acre.

"4. What do you find was the fair market value of plaintiff's premises in March, 1926, at the time this action was commenced? A. $40 per acre.

"5. If you allow plaintiff damages, state the amount and itemize same. A. Pasture, $250; stock pond, $250; inconvenience, $500; $1,000."

The defendant filed a motion for judgment on the special findings of the jury and also a motion for new trial, but subsequently withdrew the latter. The court overruled the motion for judgment on the special findings and rendered judgment for the plaintiff upon the general verdict for $1,000.

It is strenuously argued by the appellant that this case should come under the general rule that when the special findings of fact are inconsistent with the general verdict the special findings should

control, and judgment should have been rendered for the defendant notwithstanding the general verdict. This is the admitted rule provided the special findings are inconsistent with the general verdict; and that is the only question here for consideration. The answers are somewhat confusing and one of the questions is very indefinite as to time.

The case was tried upon the theory that the damages to which the plaintiff was entitled, if any, were for the permanent injury to the land, and the measure of such damages should be the difference, if any, in the value of the land immediately prior to such injury and its value after the injury. Paragraph 7 of the instructions given by the court is pertinent to our inquiry, and is as follows:

· "If you find for the plaintiff in this case, then the measure of his recovery would be the diminution, if any, in the fair market value of the farm in question, which is the direct and proximate result of the pumping and draining of poisonous or alkali water onto said land and property, if such was done; that is, the difference, if any, in the fair market value of the farm in its condition immediately prior to said alleged injury and in its condition thereafter, resulting directly and proximately from such pumping and draining of said water. And in determining the amount, if any you allow, you should take into consideration the character of the land, the use made of it, the quantity of land injured, if any, the improvements on said land and the injury thereto, if any, and also, whether any of said injuries are permanent or only temporary, and' all facts and circumstances in evidence bearing upon such question."

The plaintiff fixes the time when the defendant began pumping water over his land as "along in the fall of 1925," "four, five or six months [before March 1, 1926] that I know of." The only witness who gave evidence as to the value of the land before and after the injury complained of gave it as $70 per acre in the year 1925 and $40 per acre on March 1, 1926. The only evidence we have as to when the alleged injury began is that of the plaintiff to the effect that it was in the fall of 1925, four, five or six months before March 1, 1926. If question No. 3 had been as definite as to time as No. 4 is, the reasonable answer to it might have obviated much of the confusion confronting us here. Why should it cover the whole of the year of 1925? If there was any injury to the land it unmistakably began in the fall of that year. Four, five or six months before March 1, 1926, would be the first of September, October or November, 1925. Question No. 3 asks what was the value of this land in 1925. One witness said it was worth $70 per acre sometime in 1925. The jury says it was worth $40 per acre sometime in 1925. Under the general

verdict and the instructions of the court the jury apparently concluded that it was worth $10 per acre more sometime in 1925 than it was on March 1, 1926.

Many cases and authorities are cited to show that the meaning of the word "in" as used in question No. 3 is equivalent to "during," "throughout," "within the limits or duration of." "In the month of May" was held to be "up till the last hour of May 31." There is nothing in any of these definitions to require the same condition to exist unchanged during the whole year. If wheat was said to have been worth one dollar a bushel in 1925 no one would conclude from such statement that there had been no change in the price during the entire year. It is perfectly reasonable to apply this answer to question No. 3 to the latter part of the year, which harmonizes the answer with the necessary element in the general verdict that the land was worth $10 per acre more at some other time in 1925, and is not inconsistent with the general verdict or the answer to No. 4.

"Where the findings will fairly admit of an interpretation which will make them harmonious with one another and with the general verdict, that interpretation should be given, rather than one which will overturn and destroy both the findings and the verdict." (27 R. C. L. 887.)

"Obscurity or slight inconsistency in special findings does not necessarily require the overthrow of a verdict. All findings are to be considered together, and if one interpretation points to inconsistency with the verdict and they are fairly susceptible of another which harmonizes with the verdict, the latter should be adopted." (*Brown v. Utilities Co.,* 110 Kan. 283, syl. ¶ 3, 203 Pac. 907.)

"Where a question of inconsistency arises between findings made in answer to special questions and a general verdict nothing will be presumed in aid of special findings, while every reasonable presumption will be indulged in favor of the general verdict." (*Morrow v. Bonebrake,* 84 Kan. 724, syl. ¶ 3, 115 Pac. 585.)

"It is error for a court to set aside a general verdict and enter judgment on the special findings, unless the special findings compel such action. Where it is possible to harmonize the special findings with the general verdict the latter is controlling." (*Osburn v. Railway Co.,* 75 Kan. 746, syl., 90 Pac. 289. See, also, *Bevens v. Smith,* 42 Kan. 250, 21 Pac. 1064; *Jackson v. Linnington,* 47 Kan. 396, 28 Pac. 173; *Railway Co. v. Frey,* 66 Kan. 296, 71 Pac. 525; *Seeds v. Bridge Co.,* 68 Kan. 522, 75 Pac. 480; *Samson v. Zimmerman,* 73 Kan. 654, 85 Pac. 757; *Moore v. Connelly,* 119 Kan. 35, 237 Pac. 900.)

Appellant insists that the answers to question No. 5 are in conflict with the instructions given by the court as to the measure of damages and not in harmony with the allegations of the petition.

It is argued that the answers show that instead of accepting the directions of the court for estimating the damages the jury adopted another and different rule for such determination, based upon injury to pasture, injury to stock pond, and for inconvenience, and that the term "pasture" is not mentioned in the petition. There is no conflict as to what the true measure of damages is and ought to be. The court gave it in the seventh instruction, above quoted. The jury is asked in this question to state the amount of damages and itemize the same. Strictly speaking, there are no items to a difference in value of property before and after an injury. The difference is not composed of items; nor is it the total of several items. It is simply a difference between two values of the property, one before the injury and the other after the injury. The items given in attempting to answer the question could very naturally be the several things the jury took into consideration in arriving at this difference of value of the land before and after the injury. The court instructed them to "take into consideration the character of the land, the use made of it, the quantity of land injured, . . . and all facts and circumstances in evidence bearing upon such question." Under the head of the character of the land and the use made of it there could very properly be considered pasture land; and the use made of a part of the land could be for a stock pond. The latter would also be an improvement, which the court directed the jury to consider; and among the circumstances would be the inconvenience. All these items, so called, are definitely mentioned in the part of the petition above quoted, except the word "pasture" is not there used, but the injured land is described therein as "meadows and farm land." Webster defines a pasture as "grass land for cattle." The first definition given by the same author for meadow is "grass land"—in common parlance not a great deal of difference. The jury undoubtedly intended to convey by this answer the conclusion that the plaintiff's grass land had been injured to a certain extent.

The attempt to itemize the amount of damage by listing things properly taken into consideration under the instructions of the court is not necessarily in violation and disregard of the rule prescribed for the measure of damages, and when items are in general accord with the items of alleged injuries and facts and things directed to be considered they are not inconsistent with the general verdict. This was the view of the law recently expressed in the case of *In re Sidles,*

125 Kan. 1, 262 Pac. 550, where, in answer to a number of questions, the jury indicated the amounts allowed by them for cherry, apple and plum trees lost in rebuilding the barn and stock lots; also the compensation for moving a house and expenses incident thereto, as well as a number of other items. The jury had been instructed, as in this case, that the measure of damages was the difference in the value of the land before and after the injury. In the opinion it was said:

"The items enumerated do not make up the claimant's entire damages found by the jury—$3,011.94. So far as we are able to ascertain, the items only assisted the jury in arriving at the total amount of damages allowed. The damage allowed for the value of the trees was not a distinct and independent injury to the land. None of the items was considered separately and apart from the value of the land, but they were considered as a part thereof in ascertaining the ultimate damage." (p. 2.)

In an earlier case, where the same question was raised upon the introduction of evidence, it was held on appeal:

"In determining the damages to which he is entitled, consideration may be given to the character of the improvement and its effect upon the part of the tract not taken, including interference with access to the tract and the use to which it is devoted or reasonably adapted." (*Smith v. Wyandotte County,* 113 Kan. 244, syl., 214 Pac. 104.)

In line with the authorities above cited we conclude that the answers to the special questions, when given a reasonable and natural interpretation, are not inconsistent or out of harmony with the general verdict, and we find no error in the overruling of the motion of the appellant for judgment in its favor on the special findings.

The judgment is affirmed.