No. 46,577

WILMA JENNINGS, *Appellee,* v. MISSOURI PACIFIC RAILROAD COMPANY and EDWIN K. PETERSON, *Appellants.*

(506 P. 2d 1125)

Opinion filed March 3, 1973.

*Ralph M. Hope,* of Wichita, argued the cause, and *William Y. Chalfant,* of Hutchinson, was with him on the brief for the appellant.

*Kenneth E. Peirce,* of Hutchinson, argued the cause, and *Frank S. Hodge, H. Newlin Reynolds, Dennis O. Smith* and *Dan W. Forker, Jr.,* all of Hutchinson, were with him on the brief for appellee.

The opinion of the court was delivered by

SCHROEDER, J.: This is an action for damages wherein Wilma Jennings (plaintiff-appellee) seeks recovery for personal injuries to herself and damage to her automobile resulting from a collision in Hutchinson, Kansas. While traveling on a four lane limited access freeway her automobile struck the side of a railroad car being pushed over a grade level crossing in a switching operation by one of the Missouri Pacific Railroad Company's locomotives in the city of Hutchinson, Kansas. The jury returned a verdict against Edwin K. Peterson and the Missouri Pacific Railroad Company (defendants-appellants) in the amount of $7,807.60. Appeal has been duly perfected from the judgment entered thereon.

The points asserted on appeal challenge the sufficiency of the evidence to sustain the jury's findings on negligence and contributory negligence; whether the general verdict is consistent with the answer to special questions; and whether the trial court properly interrogated the jury concerning their answers to special questions.

On the afternoon of November 7, 1968, the appellee, a nurse, was traveling home from her work at St. Elizabeth Hospital in Hutchinson, Kansas. She was traveling south and entered the north-south Woodie Seat Freeway, a four lane limited access thoroughfare, by way of a ramp at Avenue A. The ramp where she entered the freeway is approximately one-half mile north of the grade level crossing where she struck a single gondola car being backed across the freeway by a Missouri Pacific switch engine. From the point at which the appellee entered the freeway it proceeds due south until it reaches approximately two blocks north of the point of accident, where it starts to curve slightly to the right and continues in a south-westerly direction over the crossing and through South Hutchinson. From Avenue A the freeway, proceeding south, is on an ascending grade until it reaches a point just above Avenue D, forming a viaduct over Avenue D and the Rock Island Railroad tracks. The freeway then continues on a descending grade to the point where the east-west single railroad track of the Missouri Pacific Railroad crosses the freeway at grade level. The approach of the single railroad track from the west is on an ascending grade until it reaches the freeway. The freeway has four lanes with a raised concrete medial strip extending down the center separating the two northbound lanes from the southbound lanes.

At the point where the single railroad track crosses the freeway

two ramps, one on each side of the freeway, merge into the freeway so that the intersecting track extends across the width of both ramps and the freeway.

The appellee remembers nothing concerning the accident itself. The last thing she recalls is entering the freeway by way of the entrance ramp.

At the trial the appellee produced a witness by the name of Paul Steenson, a banker, who testified concerning the circumstances surrounding the accident. He related that shortly after the appellee's auto entered the freeway it passed the Steenson auto, which was in the righthand southbound lane, and her auto then continued south in the left or inside lane. The speed limit on the freeway was 45 m.p.h. and the appellee's auto was moving from 40-45 m.p.h. as it proceeded south towards the crossing. When the appellee's auto neared the crossing she apparently saw the gondola car in front of her on the crossing and applied the brakes of her auto leaving skid marks of approximately ninety-five feet before it collided with the gondola car at the point where the rear wheels of the front trucks are located. It also struck the stirrup at the end of the north side of the leading end of the gondola car on which brakeman Wooton had been standing while it moved onto the crossing.

The appellee testified the day was clear and visibility good, that she lived in South Hutchinson twenty-two years and had gone over this crossing both ways most everyday, and knew the crossing was there at its exact location. She also knew there was a crossbuck warning sign at the crossing and that there was an advanced railroad warning sign approximately five hundred feet north of the crossing.

The only negligence alleged by the appellee in her petition, and stated in the pretrial order, was the violation by the appellants of a city ordinance (No. 29-5) requiring the bell of a locomotive to be rung whenever the locomotive "shall be approaching and moving through the public grade crossings in the city", and violation of another city ordinance (No. 29-10) making it "unlawful for any railroad company running or operating any train or cars to run the same backwards in or through the city without providing a watchman or other person on the leading end of such train *in order to prevent accidents.*" (Emphasis added.)

Paul Steenson testified he was somewhat familiar with the area in which the accident occurred, that he did not hear the bell of the

locomotive ringing and that he did not see a flagman or anyone else in the roadway. He said he had very seldom seen a train at that crossing.

The railroad produced the five crew members of the switch engine who testified on behalf of the appellants.

R. M. Wooton testified he was a conductor and brakeman for the appellant railroad and was working as a brakeman on the train involved in the accident. Wooton said they were "switching the industries of Hutchinson" at the time the accident occurred. He stated the train stopped before entering the intersection, that he got off the car before it got onto the ramp, that he walked out on the crossing and saw nothing coming and thereupon motioned the engineer to back the train on over the crossing. *His purpose in going out on the crossing was to flag the crossing if cars were coming,* however, he did not see any cars approaching when he looked to the north. The cars on the south stopped when they saw the train "coming on there." After signaling the engineer to back up, Wooton climbed on the gondola car to ride as it passed over the crossing. When he heard the squeal of tires from the brakes being applied Wooton climbed inside the gondola car to avoid being injured. On cross-examination Wooton refused to state he was out in the middle of the Woodie Seat Freeway at any time on foot. The speed of the train at the time of the accident was estimated to be from 2 to 3 m. p. h.

The testimony of the other four Missouri Pacific employees and crewmen, including the engineer and co-defendant Peterson, tend to corroborate Wooton's testimony. When Peterson saw the appellee's vehicle he applied the brakes to stop the train without any signal from the flagman, Mr. Wooton, upon whom he was depending for proper signals at the intersection.

The appellants contend there was no evidence showing they were guilty of the negligence with which they are charged.

The appellants argue the testimony of all crew members was to the effect that the locomotive's bell was ringing when the train approached and entered the crossing. They further argue the evidence shows that brakeman Wooton did ride on the leading end of the gondola car. They seem to infer because he was on the leading end of the train, his mere presence was sufficient to comply with the ordinance. Wooton's own testimony was that he did not do any flagging because he saw no automobiles approaching. Steenson said he saw no flagman and heard no bell ringing.

Our function on appeal is not to weigh conflicting evidence but simply to ascertain if there is any substantial competent evidence which, with the inferences reasonably to be drawn therefrom, sustains the jury's verdict. (*Williams v. Benefit Trust Life Ins. Co.*, 200 Kan. 51, 434 P. 2d 765.) In making such determination, the court does not weigh the evidence nor pass upon the credibility of witnesses, but merely views the evidence in the light most favorable to the prevailing party. (*City of Wichita v. Unified School District No. 259*, 205 Kan. 701, 703, 472 P. 2d 253 and cases cited therein.)

The jury in answer to special questions found the appellants' negligent act to be "inadequate flagging on the Woodie Seat Freeway," and that such negligent act was the proximate cause of the collision. The jury also absolved the appellee of contributory negligence.

Suffice it to say the evidence, when viewed in the light most favorable to the appellee, sustains the jury's verdict that inadequate flagging on the Woodie Seat Freeway constituted a negligent act which was the proximate cause of the accident.

The mere presence of a brakeman on the gondola car was not sufficient to comply with city ordinance 29-10. The requirement that the railroad must provide a watchmen "to prevent accidents" contemplates more. A watchman riding a gondola car being backed over a grade level crossing on a busy limited access freeway within the city limits does not, without more, help prevent accidents. The duty placed upon the railroad by the ordinance contemplates an *active, functioning watchman or flagman.* (See, *Moses v. Missouri Pac. Rld. Co.*, 138 Kan. 347, 26 P. 2d 259.)

Appellants contend the appellee was guilty of contributory negligence in failing to keep a proper lookout and in failing to keep her vehicle under proper control.

The appellants argue the case law of Kansas clearly establishes that trains have the right-of-way at railroad crossings; and that a railroad track is in itself a sign of danger. The cases cited by the appellants in support of their argument arise from crossing accidents involving high speed trains operating in what may be called a road operation as distinguished from a switching operation in the yards.

The trial court instructed the jury:

"Usually a railroad train has the right-of-way at grade crossings, but unusually hazardous conditions prevailing at a crossing in a city industrial area may require a railroad company engaged in switching operations to anticipate that the mere presence of a switch engine as it approaches the crossing will

not adequately warn motorists using the street, and the unusual hazard may make additional warnings and precautions by the railroad company necessary."

The foregoing instruction was taken from *Williams v. Union Pacific Railroad Co.*, 204 Kan. 772, 777, 465 P. 2d 975, upon which the trial court relied. *Williams* has subsequently been followed in *Sexsmith v. Union Pacific Railroad Co.*, 209 Kan. 99, 495 P. 2d 930.

This case is similar to the *Williams* case in many respects. In *Williams* this court considered a truck-train collision in an industrial area of Kansas City. The locomotive was a switch engine, carrying a crew of four, which was moving only at walking speed at the time the accident occurred. There the crossing was also at grade level on a city street where the speed limit was 30 m. p. h. Other conditions found in *Williams* which made the crossing more than ordinarily dangerous are not present here, but a different set of hazardous conditions which made the crossing herein more than ordinarily dangerous are present, including the uphill slope the train traveled before reaching the freeway, the crossing of the freeway at grade level, the failure to provide a traffic control signal at the crossing, the sense of security a driver has in traveling on a high speed *limited access freeway* and the obscuring effect a dense row of trees produced in the background near the crossing.

Whether a railroad crossing is more than ordinarily dangerous is generally a question of fact, although the sufficiency of the evidence to establish that fact remains a question of law. (*Sexsmith v. Union Pacific Railroad Co.*, supra.)

Where unusually dangerous conditions prevail at a railroad crossing the unusual hazard may make additional warnings and precautions by the railroad company necessary. The crux of the matter is simply whether the railroad has afforded users of the crossing sufficient and adequate protection under reasonably prudent person rule. (*Sexsmith v. Union Pacific Railroad Co.*, supra.)

The evidence in this case was sufficient to bring it within the rule of law stated in *Williams* and *Sexsmith* governing unusually dangerous railroad crossings in a city. The jury was properly instructed on the appellee's theory of the case and its verdict imports a finding that unusually hazardous conditions prevailed at the crossing in question.

The jury was specifically requested to determine whether the appellee was contributorily negligent, and in answer to a special question the jury found she was not. Upon the record here presented we are unable to say the appellee was guilty of contributory

negligence as a matter of law. The appellee's contributory negligence on the record here presented was properly left to the jury as a question of fact. There was testimony this spur track was seldom used. The main line of the appellant's railroad track *went under the freeway* a short distance from the intersection in question.

The appellants contend the general verdict is inconsistent with the answers to special questions Nos. 1 and 3.

Special questions submitted to the jury and the answers, germane to this point, were as follows:

"Question 1: What do you find was the proximate cause of the collision between plaintiff's automobile and the car of the defendants' train?

"Answer: Inadequate flagging on the Woodie Seat Freeway.

"Question 2: Do you find that the defendants were negligent?

"Answer: Yes.

"Question 3: If you answer question 2 in the affirmative, then state what the defendants' act or acts of negligence were.

"Answer: Inadequate flagging on the Woodie Seat Freeway."

The appellants argue that since the only alleged acts of negligence of appellants were violations of city ordinances (29-5 and 29-10), and since the jury found the appellants' negligent act to be "inadequate flagging", they are absolved of either of the acts of negligence alleged.

The petition charged,

". . . [A]nd [the defendants] also failed to have a watchman as required by Sction 29.10 of the Ordinance of the City of Hutchinson. . . ."

As heretofore stated, the ordinance contemplates more than the mere presence of a watchman on the leading end of a train moving backward. The ordinance contemplates an active, functioning watchman, to serve as a flagman for traffic at intersections, where the circumstances require the flagging of traffic.

Where a question of inconsistency arises between findings made in answer to special questions and a general verdict, nothing will be presumed in aid of special findings, while every reasonable presumption will be indulged in favor of the general verdict. (*Morrow v. Bonebrake*, 84 Kan. 724, Syl. ¶ 3, 115 Pac. 585.)

It is error for a court to set aside a general verdict and enter judgment on the special findings, unless the special findings compel such action. Where it is possible to harmonize the special findings with the general verdict the latter is controlling. (*Lesher v. Carbon Coal Co.*, 127 Kan. 34, 272 Pac. 155; and authorities cited therein.)

Applying the foregoing rules the special findings of the jury are

in harmony with the general verdict. The substance of the special findings made by the jury is that the appellants failed to comply with city ordinance 29-10, requiring a watchman on the leading end of a train moving backward in the city in order to prevent accidents. (*Springer v. Railroad Co.*, 95 Kan. 408, 148 Pac. 611; *Ahlstrom v. Kansas Milling Co.*, 85 Kan. 548, 118 Pac. 57; *Martin v. Railway Co.*, 93 Kan. 681, 145 Pac. 849.)

The trial court attempted to clarify any confusion surrounding the special findings when the following inquiry was addressed to the jury foreman:

"THE COURT:  . . .  Well, let's see, do I understand from your answer: '*Inadequate flagging on the Woodie Seat Freeway*' that you feel that they did not comply with City Ordinance 29-10.

"JURY FOREMAN: Yes, sir. That is correct.

"THE COURT: All right. The jury will be discharged, and thank you very much."

The appellant contends the trial court erred in making the foregoing inquiry. No objection was asserted either during the trial, or in two post-trial motions filed by appellants. Complaint concerning the trial court's inquiry first made to this court on appeal comes too late.

In *Bateman v. Crum*, 186 Kan. 1, 4, 348 P. 2d 639, the court said:

".  .  .  Moreover, there was no objection to the special question either at the time it was submitted to the jury or at the time the jury returned into court its answers to the special questions. Since plaintiff did not enter his objection at the proper time, he is in no position to complain now. (*McKinley-Winter Livestock Commission Co. v. Fletcher*, 185 Kan. 637, 347 P. 2d 433; *Shivers v. Carlson*, 178 Kan. 170, 177, 283 P. 2d 450.).  .  .  ."

Even assuming the question is properly before this court, we find no indication the trial court's action in asking the jury to clarify its answers to the special questions was prejudicial to the appellants.

After carefully reviewing the record we find no reversible error.

The judgment is affirmed.

FONTRON and KAUL, JJ., dissenting.