No. 47,043

T. O. ALLEY and EVALENA ALLEY, *Appellees,* v. CHICAGO, ROCK ISLAND AND PACIFIC RAILROAD COMPANY, *Appellant.*

(516 P. 2d 967)

Opinion. filed December 8, 1973.

*Mark L. Bennett, Jr.,* of Topeka, argued the cause, and *Clayton M. Davis,* of Topeka, *Mark L. Bennett,* of Topeka, and *Bill Baldock,* of Alma, were with him on the brief for the appellant.

*Arthur E. Palmer,* of Topeka, argued the cause, and *Ernest J. Rice,* of Topeka, and *Leo N. Johnson,* of Council Grove, were on the brief for the appellees.

The opinion of the court was delivered by

FOTH, C.: On February 15, 1969, plaintiff Evalena Alley left her house in rural Wabaunsee county to drive to her job in Council Grove. To get to the nearest township road she was required to cross the main line of the Rock Island railroad, which traverses the Alley farm in a general east-west direction. As she crossed she collided with an eastbound train. She suffered injuries requiring eight days of hospitalization and the loss of about two weeks of work; the 1969 Ford which she owned jointly with her husband was totally destroyed. A Wabaunsee county jury awarded her $5,000 for her personal injuries and awarded the Alleys jointly $2,770.40 for the loss of the car.

The defendant railroad has appealed, contending among other things that it should have had a dismissal or a directed verdict either at the close of the plaintiff's evidence or at the close of all the evidence. It claims the evidence was insufficient to show a breach of duty on its part and, more importantly, that it demonstrates Mrs. Alley to have been guilty of contributory negligence as a matter of law. Since this court concurs in the latter assertion it is unnecessary to consider the other points raised by the parties.

The duty of one about to cross a railroad track is well defined in our law. The early cases are collected, discussed and explicated in *Horton v. Atchison, T. & S. F. Rly. Co.,* 161 Kan. 403, 168 P. 2d 928. The court there repeated the familiar maxim that "A railway track is itself a warning of danger." (Syl. ¶ 1.) It also noted that this court has never required a traveler to always stop, look and listen, but "is committed to the more liberal rule which requires a traveler to exercise diligence commensurate with the hazard." (Syl. ¶ 2.) Having so held the court went on to reiterate the following principles particularly applicable to Mrs. Alley's conduct:

"It is not enough that a traveler approaching a series of railroad tracks *stop*, look and listen at a point from which his view of the main tracks is sufficiently obstructed that he cannot be assured he can proceed with safety, when looking on nearer approach to main tracks would reveal the danger." (Syl. ¶ 3.)

"Where obstructions to a traveler's view prevent him from otherwise ascertaining the fact that he may cross a railroad track with safety, then it is his duty to stop to make sure of his safety before crossing. (Following *Williams v. Electric Railroad Co.,* 102 Kan. 268, Syl. ¶ 2, 170 Pac. 397.)" (Syl. ¶ 4.)

" 'The driver of an automobile cannot recover damages for injury to himself and his machine, where he approaches a railway track at a place at which he cannot see along the track until his automobile is in a place where it will be struck by a passing engine or cars, and does not stop his car to ascertain whether or not there is danger, although he listens before going into the place of danger and does not hear any engine or cars coming.' (Following *Wehe v. Railway Co.*, 97 Kan. 794, syl. 156 Pac. 742.)" (Syl. ¶ 5.)

"The duty of a traveler to look and listen where an opportunity exists is an absolute and continuing duty. It requires him to look and listen at the point nearest to a main track where he may do so with safety, that is, at the point where it will do the most good." (Syl. ¶ 7.)

The continuing validity of these rules was recently recognized in *Sander v. Union Pacific Rld. Co.*, 205 Kan. 592, 470 P. 2d 748, where we said (p. 596):

"The duties of a driver approaching a railroad crossing are set forth in many decisions of this court and need not be elaborated in detail. The established law in this state is that a railroad track is itself a warning of danger; that the duty to exercise care in crossing railroad tracks is a continuing duty; and that a person who attempts to negotiate a railway crossing directly in front of a rapidly moving train, of which approach he is or should be aware, is guilty of contributory negligence." (Citing, *inter alia, Horton v. Atchison, T. & S. F. Rly. Co.*, supra.)

In measuring Mrs. Alley's conduct by these standards we look at the undisputed facts, of which the most significant come from the testimony of Mr. and Mrs. Alley.

The Alleys' house lies to the south of the railroad right of way. Their private road or drive runs from the house to the northeast until it enters the right of way some 75 feet south of the eastbound track. From there it runs east, roughly parallel to the tracks, about 300 feet. There it makes a left curve, to the north, toward the tracks about 57 feet away as the crow flies; from the beginning of the curve to the first track is about 98 feet by road. The tracks are on a fill at this point, and as it approaches the tracks the drive rises some eight to ten feet to the level of the crossing. There was brush between the drive and the elevated railroad bed.

A new, wet snow had fallen on the day in question, and before Mrs. Alley assayed the crossing her husband bladed the drive and crossing. Having done so, he sat on his tractor in the yard and watched the ensuing accident. Before she started he told her that if she couldn't make it over the tracks he would come down with the tractor and pull her over.

Mrs. Alley testified that because it was slick she was concerned about making it up and over the tracks, even with the steel-studded snow tires on the car. It was necessary, she said, to increase speed to make it up the grade, and you couldn't do that until after you had rounded the curve and were heading straight for the tracks. This she did, attaining a speed estimated by her at "maybe five, six, eight miles per hour." Failure to speed up, she said, might have resulted in sliding off the road.

Asked where she was when she first looked for a train, Mrs. Alley replied:

"A. Right as I turned at the bend, and then just before I got to the track, just before I got to the track, twice I looked.

"Q. Just before you turned on the bend?

"A. Around this little sharp turn that takes you right up to the track.

"Q. And you looked and didn't see a train. You couldn't see the track even, you say?

"A. Not clearly you couldn't; not see a train coming.

"Q. Could you see at all?

"A. I wouldn't say whether I could see at all or not; not clearly enough that I could see the train.

"Q. All right. The next time you looked, where was the automobile?

"A. We was right at the track, where I looked, but the train was there too.

"Q. You were practically on the track and the train was right there.

"A. Right there too.

"Q. And between those two times you didn't look to see if a train was coming?

"A. What do you mean by that?

"Q. I mean, those were the only two times you looked for a train?

"A. It's the only two times you could possibly see at all for the brush.

"Q. You were well aware that brush existing and the obstruction to view?

"A. You couldn't help to be aware of it.

"Q. And you were aware of that before you attempted to make this crossing, before?

"[A] I had crossed it before and always thought at least if the train would have whistled I could have heard it."

It is this testimony, coupled with the other circumstances, which in the court's view convicts Mrs. Alley of contributory negligence under the established rules of law quoted above. Mrs. Alley first looked for a train at a point before the curve in the road began, some 98 feet by road from the track. At that point she could not see clearly enough, by her testimony, to tell whether a train was coming or not. She proceeded to navigate that 98 feet at an accelerating speed which reached a maximum of eight miles per hour,

but never again looked until she was "right at the track" and could not stop.

Her failure to look "at the point where it will do the most good" was a clear breach of her obligation as set forth in *Horton v. Atchison, T. & S. F. Ryl. Co.*, Syl. ¶ 7, supra, unless it can be excused by the presence of the brush. According to her testimony, the brush prevented her seeing down the track between her first, obstructed look, and her second, too-late look. That is just the situation described in paragraphs 4 and 5 of the syllabus in the same case, which were prompted by a truck driver's proceeding over a crossing when his view was obstructed by boxcars on a side track. Where the motorist's view is obstructed, his duty is to make sure the crossing is safe. When he gambles on the chance that there will be no train, his stake includes a conclusive presumption of his negligence.

Other circumstances leading to a conclusion of contributory negligence are that: Mrs. Alley had lived on the farm for twenty years and was thoroughly familiar with the crossing and the brush; she had crossed the tracks at least twice daily going to work for the past nine years; she knew that trains on the main track were not on a regular schedule but could be expected any time; and she knew and was "conscious of the fact" that about half the trains passing by failed to blow their whistle at the crossing.

As to the last factor, the failure to blow this particular train's whistle was found by the jury, in answer to special questions, to be the sole act of negligence on the part of the railroad. Evidence of the railroad's uneven practice in this regard was introduced by plaintiffs not only through Mrs. Alley but other witnesses, over the railroad's objection. While of dubious value in establishing the railroad's "habit and custom," and thus whether or not the whistle was blown on this occasion, such evidence did establish that Mrs. Alley could not realistically count on a warning of an approaching train from this source.

We are committed to the rule that contributory negligence is ordinarily a question of fact for the jury, but we must also recognize that when the facts and fair inferences therefrom are undisputed it becomes a question of law. *Hines v. Leach*, 212 Kan. 589, 512 P. 2d 103; *Abston v. Medora Grain, Inc.*, 206 Kan. 727, 482 P. 2d 692. The latter situation obtains in this case, and we hold that Mrs. Alley was guilty of contributory negligence as a matter of law.

The judgment is therefore reversed with directions to enter judgment for the defendant.

APPROVED BY THE COURT.