No. 48,818

Ann Kleibrink, and Beth Anne Kleibrink, a Minor, by Her Mother and Next Friend, Ann Kleibrink, *Appellees,* v. Missouri-Kansas-Texas Railroad Company, Inc., *Appellant.*

(581 P.2d 372)

Opinion filed July 15, 1978.

*John B. Markham,* of Parsons, argued the cause and was on the brief for the appellant.

*Charles F. Forsyth,* of Erie, argued the cause, and was on the brief for the appellees.

The opinion of the court was delivered by

SCHROEDER, C.J.: This is an appeal from an action to recover for the wrongful death of plaintiffs-appellees' decedent, Royal Edward Kleibrink, who was killed when his car collided with a train owned and operated by the Missouri-Kansas-Texas Railroad Company, Inc., defendant-appellant. The case was tried under our new comparative negligence statute. The jury found the railroad 100 percent negligent and awarded damages in the amount of $101,807.

The appellant asserts the trial court erred in limiting opinion testimony by its expert witness; in denying its requested instructions; and in refusing to reduce the damages to $50,000 plus funeral expenses as the limit for wrongful death. It also complains of misconduct by opposing counsel in his closing argument and challenges the sufficiency of the evidence.

The accident occurred on July 24, 1974, at approximately 9:20 p.m. at a public crossing just west of Stark, Kansas. The railroad track is straight and level at the crossing, and State Highway 201 dips slightly before its intersection with the tracks. The railroad maintained crossbucks on each side of the track and posted a warning sign 450 feet west of the crossing.

The evening of the accident was clear, and witnesses stated it was just dusk when the crash was heard. The decedent was going to his job as plant supervisor at the Stark Grain Elevator a very short distance beyond the railroad crossing. His car was traveling in an easterly direction on highway 201 as it approached the intersection with the railroad crossing. The appellant's train, consisting of four diesel engines, 139 tank cars and a caboose, was approaching from the south to the decedent's right at a speed of 38 miles per hour as shown by the train's speed tape and the engineer's testimony. The decedent's car struck the appellant's lead engine and was pushed 1,078 feet north up the track. There were no skidmarks on the pavement. The car was completely demolished, and the decedent was killed instantly.

The main controversy between the parties with respect to comparative negligence deals with allegations the appellant (1) failed to blow its whistle; (2) failed to keep the crossing free from obstruction to vision; and (3) failed to have the crossing properly

marked—it had no crossing gate or flashing signals. The only eyewitnesses to the collision were the appellant's brakeman and engineer. W. L. McKain, the head brakeman, was seated in the lead engine in a position in which he was able to see in all directions. He testified he first observed the decedent's car as it was coming over a hill on the highway approximately seven-eighths of a mile from the crossing. He estimated it was traveling at least 50 miles per hour. He stated he then signaled the engineer to blow the whistle and continued to watch the car as it came east until it slowed to approximately 25 miles per hour before the crossing.

Richard Mullinax, the engineer, testified he began blowing the whistle before the Stark crossing post when he noticed the decedent's car traveling at an excessive rate of speed. He whistled continuously using the short blast method in order to get the driver's attention. When he realized the car was not going to stop he placed the train in emergency but continued to blow the whistle. He further stated the bell and the headlight of the train were on.

Numerous witnesses for the appellees, on the other hand, testified they heard no train whistle until immediately after the crash. The appellees also introduced testimony that weeds, brush, and trees obstructed the vision of a motorist approaching the crossing from the west as to trains approaching from the south. They claimed the crossing was more than ordinarily dangerous due to the appellant's negligence in maintaining it as required by law.

The appellant moved for a directed verdict at the end of the appellees' case and at the close of all the evidence. These motions were denied, the case was submitted to the jury, and the appellant has duly perfected this appeal.

At the outset the appellees ask this court to dismiss the appeal, claiming the trial court had no jurisdiction to extend the time for filing the designation of the record, or in the alternative, abused its discretion by allowing the appellant to file such designation more than six months out of time. This argument lacks merit.

Supreme Court Rule No. 6(p), 214 Kan. xxv, in effect when this case was tried, states the provisions for delays and extensions of time when the appellant is docketing an appeal. Our court has never favored denying an appeal on technical procedural

grounds. (*See Crouch v. Marrs,* 199 Kan. 387, 388, 430 P.2d 204 [1967].) Admittedly, the appellant was not in conformity with the rules, but inherent in the trial court's ruling was a finding of excusable neglect. (*Franklin v. Northwest Drilling Co., Inc.,* 215 Kan. 304, 307,.524 P.2d 1194 [1974]; *Almquist v. Almquist,* 214 Kan. 788, 794, 522 P.2d 383 [1974]; *Van Brunt, Executrix v. Jackson,* 212 Kan. 621, 625, 512 P.2d 517 [1973]; *see also Cribbs v. Pacific Intermountain Express,* 208 Kan. 813, 494 P.2d 1142 [1972].) Absent a showing of abuse of discretion, the trial court's order will not be disturbed. (*Van Brunt, Executrix v. Jackson,* supra, at 625.) Here no abuse of the exercise of the trial court's power of discretion has been shown.

The appellant first contends it was improper to deny the testimony of Clifford Haslett; a Kansas Highway Patrolman, that the decedent's inattentive driving contributed to his death. It relies on the cases of *Ziegler v. Crofoot,* 213 Kan. 480, 516 P.2d 954 (1973); and *Massoni v. State Highway Commission,* 214 Kan. 844, 522 P.2d 973 (1974) to support this argument. This issue is controlled by our recent decision of *Lollis v. Superior Sales Co.,* 224 Kan. 251, 580 P.2d 423 (1978), where we overruled language in *Ziegler* and *Massoni* and held:

"In an automobile accident negligence case, an expert witness, whether an investigating police officer or other expert, may not state his opinion as to which of the parties was at fault in causing the accident or his opinion concerning what acts of the parties contributed to the accident. . . ." (Syl. 3.)

Thus, no error exists in the exclusion of the testimony.

The appellant next contends the jury verdict is not supported by the evidence. Specifically it contends the jury ignored and did not consider the evidence given by its eyewitnesses that the decedent was guilty of negligence in driving in front of the train, which was a proximate cause of his death.

We have often stated a verdict or finding of a jury cannot be disturbed by the court on appeal if there is substantial competent evidence in the record to support it. (*Dold v. Sherow,* 220 Kan. 350, 356, 552 P.2d 945 [1976]; *Carnegie v. Gage Furniture, Inc.,* 217 Kan. 564, 538 P.2d 659 [1975]; and *Hallett v. Stone,* 216 Kan. 568, 534 P.2d 232 [1975].) Similarly when a verdict is attacked on the ground that it is contrary to the evidence, it is not the function of the Supreme Court to weigh the evidence or to pass upon the credibility of the witnesses. The court is concerned only with the

evidence and all reasonable inferences to be drawn therefrom which support the verdict, and it is of no consequence that there may have been evidence which, if believed, would have supported a different verdict. (*Farmers Ins. Exchange v. Schropp,* 222 Kan. 612, 620, 567 P.2d 1359 [1977] and cases cited therein; *Essmiller v. Southwestern Bell Tel. Co.,* 215 Kan. 74, 80, 524 P.2d 767 [1974]; *Montgomery v. Morgenson,* 213 Kan. 167, 515 P.2d 746 [1973]; *Jennings v. Missouri Pacific Railroad Co.,* 211 Kan. 389, 506 P.2d 1125 [1973]; and *Williams v. Union Pacific Railroad Co.,* 204 Kan. 772, 465 P.2d 975 [1970].)

Here Mr. and Mrs. Carl Hazen, who were gathering cantaloupes in a field one mile from the crossing, testified they did not hear the train whistle on this unscheduled run until after they heard the crash. Marion and Bell Elder, the appellant's own witnesses, testified they heard a whistle only a split second before they heard the collision. The engineer and brakeman, on the other hand, stated the whistle had been blown at the signal posts and continued intermittently until the train entered the intersection. Conflicting evidence concerning the railroad markings and physical obstructions was also introduced. In reaching its verdict the jury obviously accepted some testimony as true and rejected contrary testimony as false. This is its proper function. We hold substantial competent evidence exists to support the verdict.

The appellant's next two points on appeal concern the instructions in the case. First it contends the trial court erred in refusing to give requested instructions on right-of-way at a railroad crossing. The trial court found and the appellees argued that right-of-way was not specifically made an issue in the pretrial order, and the instructions were precluded.

The pretrial order states in pertinent part:

"The issues to be tried are:

"1. Whether defendant was negligent, and of course this includes proximate cause;

"2. Whether plaintiffs' decedent was contributorily negligent, and of course this includes proximate cause; and

"3. The amount of damages.

"The burden of proof is upon plaintiffs as to No's. 1 and 3 and upon defendant as to No. 2.

"The specific grounds of negligence charged against defendant are:

"1. Failure to have railroad crossing properly marked;

"2. Failure to keep obstructions from right-of-way; and

"3. Failure of approaching train to blow whistle.

\* \* \* \* \*

"The acts of contributory negligence charged against plaintiffs' decedent are:
"1. Failure to maintain a proper lookout;
"2. Excessive speed in the circumstances;
"3. Failure to stop, slow, or turn aside to avoid a collision;
"4. Failure to keep his vehicle under proper control; and
"5. Failure to observe signs and warning signals."

As a general rule a pretrial order entered by the trial court, pursuant to K.S.A. 60-216, controls the subsequent course of action unless such order is modified at the trial to prevent manifest injustice. This proviso reposes in the trial court large discretionary powers. (*Frevele v. McAloon*, 222 Kan. 295, Syl. 1, 564 P.2d 508 [1977]; *Kames Enterprises, Inc. v. Quan*, 221 Kan. 596, 561 P.2d 825 [1977]; and *Dold v. Sherow*, supra at 353.)

Furthermore, in Annot., 22 A.L.R.2d 599, 603 (1952), it is stated:

"Where the pretrial order frames the issues to be tried, and the order is not modified, the court may, and should, refuse any request for an instruction which is inconsistent with the order or which is not within the scope of the issues stated in the order. . . ."

*See also* 75 Am. Jur. 2d *Trial* § 646 (1974) and 88 C.J.S. *Trial* § 381(a) (1955).

Here in view of the limitation of the negligence issues in the pretrial order the refusal to give the instruction on right-of-way was correct. The appellant's contention the trial court erred in overruling its objection to Instruction 23, which followed the language in PIK, Civil, § 8.80 verbatim, because the jury was not sufficiently instructed about right-of-way is equally nonconvincing.

The appellant also complains of refusal to give requested Instruction 19 based upon duty to stop. It provides:

"You are instructed that where obstructions to a traveler's view prevent him from otherwise ascertaining the fact that he may cross a railroad track with safety, then it is the duty to stop to make sure of his safety before crossing. . . ."

This instruction represents a correct statement of the law based upon *Alley v. Chicago, Rock Island & Pacific Rld. Co.*, 213 Kan. 457, 516 P.2d 967 (1973). The trial court refused to give it, however, claiming various other instructions covered it.

Refusal to give a requested instruction does not result in reversible error when the substance thereof is contained in other instructions. (*Schmidt v. Farmers Elevator Mutual Ins. Co.*, 208

Kan. 308, Syl. 4, 491 P.2d 947 [1971]; *see also Drake v. Moore,* 184 Kan. 309, 336 P.2d 807 [1959].) Moreover, the fact that the requested instruction is technically a correct statement of the law does not make the trial court's refusal to give such instruction reversible error. (*Emond v. City of Wichita,* 185 Kan. 720, 723, 347 P.2d 256 [1959].) Here the substance of the requested instruction was covered by Instructions 21 and 22 which followed PIK, Civil §§ 8.12 and 8.02A.

The appellant argues error was committed when the trial court refused to give an instruction on remedial measures based upon K.S.A. 60-451. This argument overlooks the fact K.S.A. 60-451 is a rule of evidence. Here *the appellant* initially submitted the evidence relating to remedial conduct—cutting weeds and clearing obstructions two days after the accident. Thereafter it failed to object when further evidence was introduced. By its own actions it has waived a right to assert error.

The appellant next contends the trial court erred in refusing to grant a mistrial because of misconduct by opposing counsel in his closing argument.

Remarks of counsel are reversible error when, because of them, the parties have not had a fair trial. (*Smith v. Blakey, Administrator,* 213 Kan. 91, 515 P.2d 1062 [1973].) Of course, the trial court is in a better position than an appellate court to determine whether the verdict resulted from asserted misconduct of counsel or from passion and prejudice, and ordinarily its conclusion in the matter will not be disturbed. (*Pike v. Roe,* 213 Kan. 389, 392, 516 P.2d 972 [1973]; *Nelson v. Hardesty,* 205 Kan. 112, 468 P.2d 173 [1970]; and *Miller v. Braun,* 196 Kan. 313, 411 P.2d 621 [1966].)

In the instant case the appellees' counsel misstated the number of diesel units on the train which were required to have headlights. The appellant's counsel objected and immediately moved for a mistrial. This motion was overruled. The remark about the lights was isolated. The appellees did not claim negligence in failure to use proper lights nor was there any argument at the trial the train was improperly lighted. Therefore, no prejudice to the appellant's rights has been shown.

Finally, the appellant asserts the trial court erred in refusing to reduce the jury's verdict to $50,000 plus funeral expenses, which was the limit for wrongful death under K.S.A. 1974 Supp. 60-

1903 at the date of the decedent's death on July 24, 1974. The statute was subsequently amended to its present form on July 1, 1975.

The pretrial order filed August 22, 1975, recited the verdict could not exceed $50,000. It provided:

"Defendant contends that under K.S.A. 1974 Supp. 60-1903 plaintiffs cannot claim more than $50,000 (plus funeral expenses) for wrongful death. It is the Court's interpretation of the statute that a plaintiff cannot be awarded more than the limit. This case will be tried under our new comparative negligence rules (K.S.A. 1974 Supp. 60-258a) and applying the two statutes together it is my view that if from the jury's findings a plaintiff is entitled to recover under the statutory formula of comparative negligence the Court will enter judgment for the appropriate amount, and that amount cannot exceed $50,000."

The jury in this case subsequently found the appellant 100 percent negligent and returned a verdict for $101,807, which represented the entire amount prayed for in the petition. The trial court then entered judgment for the entire amount of the award based upon K.S.A. 1974 Supp. 60-1903 stating in its memorandum:

". . . In short, my interpretation is that the limitation is simply upon what the trier of the facts can award."

In so doing the trial court disregarded the pretrial order and misconstrued the law.

While our court has never specifically decided the issue, the great weight of authority holds that an increase, decrease or repeal of the statutory maximum recoverable in wrongful death actions is *not* retroactive. (*See* 22 Am. Jur. 2d *Death* § 7 [1965]; Annot., 98 A.L.R.2d 1105, 1110 [1964]; and 25A C.J.S. *Death* § 112 [1966].) The general rule as stated in 1. S. SPEISER, RECOVERY FOR WRONGFUL DEATH § 7:2 (2d ed. 1975) is:

"A statute raising the maximum limit on damages operates prospectively, rather than retroactively, and therefore does not apply in an action based on an accident which occurred prior to its enactment." (p. 693.)

In *Thomas v. Cumberland Operating Co.,* 569 P.2d 974 (Okla. 1977), the Oklahoma court was presented with the same problem we have here. The court states:

"Wrongful death actions were unknown at common law, and any right of action surviving the decedent exists by virtue of statutory enactment. The damages are limited to the pecuniary benefits lost, through the death, by those specified in the statute. Statutes and amendments imposing, removing or changing a monetary

limitation on recovery for personal injuries or death are generally held to be prospective only. All rights of action for the death of a person must depend upon the status of the law at the time of the injury. A statute passed subsequent to the injury increasing the amount recoverable in a wrongful death action creates a new element of damages as distinguished from a new remedy to enforce an existing right. Statutory increases in damage limitations are changes in substantive rights and not mere remedial changes. Therefore, these increases are not applicable retroactively to injuries sustained prior to the effective date of the statute permitting increased recovery." (p. 976.)

*(See also State ex rel. St. Louis-San Francisco Railway Company v. Buder, 515 S.W.2d 409 [Mo. 1974].)*

We concur in this reasoning and hold that deaths occurring during the one year period subsequent to the effective date of the Comparative Negligence Act of July 1, 1974, but prior to the effective date of the wrongful death amendment of July 1, 1975, are governed by comparative negligence and a $50,000 limitation.

We are not faced with the question of how the wrongful death statute's limitation interacts procedurally with the comparative negligence statute in this case. *(See, e.g., Benton v. Union Pac. R. Co.,* 430 F. Supp. 1380 [D. Kan. 1977]; *Olson v. Hartwig,* 288 Minn. 375, 180 N.W.2d 870 [1970]; *Mueller v. Silver Fleet Trucking Co.,* 254 Wis. 458, 37 N.W.2d 66 [1949]; and Vasos, *Comparative Negligence Update—A Discussion of Selected Issues,* 44 J.B.A.K. 13, 42-43 [Spring 1975].) It should be noted under our wrongful death statute, the death limitation is *not* a measure of compensation. Instead, it is simply a limitation upon recovery. Thus, the maximum amount of the prayer must be established, as it was in the case before us, without regard to the statutory limitation. We have concluded the wrongful death limitation of $50,000 damages applies to the instant case. Our comparative negligence statute allows recovery if the decedent's negligence was less than the negligence of the party against whom recovery is sought. Here the appellees were entitled to recover for the loss of their decedent, but the trial court erred in failing to reduce the damages recoverable to $50,000 plus funeral expenses.

Accordingly, the judgment of the lower court is affirmed as modified.

FROMME, J., concurring. That portion of syllabus ¶ 1 which categorically states that an expert witness may not state his

opinion concerning what acts of the parties contributed to an accident is overbroad. K.S.A. 60-456 in pertinent part provides:

"(b)  If the witness is testifying as an expert, testimony of the witness in the form of opinions or inferences is limited to such opinions as the judge finds are (1) based on facts or data perceived by or personally known or made known to the witness at the hearing and (2) within the scope of the special knowledge, skill, experience or training possessed by the witness.

.   .   .   .   .   .   .   .   .   .   .   .   .   .

"(d)  Testimony in the form of opinions or inferences otherwise admissible under this article is not objectionable because it embraces the ultimate issue or issues to be decided by the trier of the fact."

An expert when qualified may give an opinion based on both perception and facts otherwise made known to him at the hearing. Subsection (d) specifically says that if such opinions are otherwise admissible they are not objectionable because they embrace the ultimate issues to be decided by the trier of fact.

However, it was not error to exclude the expert's proffered testimony in this case because the trial judge properly determined the opinion was not within the scope of the special knowledge, skill, experience or training possessed by the witness.