No. 63,305

DONNIE D. SLEDD, *Appellant,* v. WILLIAM O. REED, JR., M.D.,
*Appellee.*

(785 P.2d 694)

Opinion filed January 19, 1990.

*Gloria M. Vusich* and *Felix G. Kancel,* of Kansas City, argued the cause
and were on the brief for appellant.

*M. Warren McCamish,* of Williamson and Cubbison, of Kansas City,
argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

HOLMES, J.: Donnie D. Sledd, the plaintiff in a medical malpractice action, appeals from a jury verdict finding no negligence on the part of the defendant, Dr. William O. Reed, Jr. The single issue on appeal is whether certain statements made by defense counsel in closing argument constitute reversible error.

The underlying facts are not in dispute. On November 13, 1984, the plaintiff fell from a tree and severely injured his back. He was taken to the emergency room at Providence-St. Margaret Hospital, Kansas City, Kansas. The emergency room doctor contacted Dr. Robert Beatty, a neurosurgeon, who examined plaintiff's x-rays and concluded plaintiff incurred a compression or burst fracture of the first lumbar vertebrae. Dr. Beatty also conducted a neurological and physical examination and found plaintiff had normal sensation in his lower extremities, normal muscle strength, and no sign of spinal cord injury reflected in his deep tendon reflexes. In his progress reports of November 14-19, Dr. Beatty noted plaintiff had no neurological deficit, observing only a tingling in the left instep on November 15. Plaintiff was neurolog-

ically normal in his lower extremities and no neurological changes occurred during this time.

On November 15, 1984, Dr. Beatty contacted the defendant, Dr. Reed, an orthopedic specialist, for an opinion on whether plaintiff's fracture was unstable and required surgery. On November 16 or 17, Dr. Reed informed Dr. Beatty that plaintiff's fracture was unstable and recommended surgery. Dr. Beatty discontinued seeing plaintiff and turned him over to Dr. Reed's care for surgery. On November 23, 1984, Dr. Reed performed surgery on the plaintiff consisting of an anterior decompression of the spine and the application of a Dunn fixation apparatus or device. Shortly after surgery, while plaintiff was still in the recovery room, it was discovered that the plaintiff was suffering a significant neurological deficit, including weakness and loss of sensation in the lower extremities and an inability to move his legs normally.

On November 27, 1989, Dr. Reed asked Dr. Beatty to examine plaintiff. After doing so, Dr. Beatty immediately recommended a myelogram, which revealed an obstruction of the spinal cord. Dr. Beatty performed a laminectomy upon the plaintiff and removed a blood clot which was pressing upon the spinal cord. However, the plaintiff still suffers from disabililty to his legs.

Dr. Reed's treatment of plaintiff from the time he recommended surgery until Dr. Beatty performed the myelogram and laminectomy was the subject of this malpractice suit. Plaintiff claimed Dr. Reed was negligent in two respects: "In choosing to carry out an 'anterior approach with decompression and Dunn fixation apparatus, or device' for injury without neurological deficit when other safer options were available"; and "[i]n failing to properly monitor plaintiff's neurological deficits postoperatively and take timely appropriate treatment measures."

As in most malpractice cases, there was expert testimony on behalf of both parties. Dr. Fries, plaintiff's expert, testified that Dr. Reed deviated from acceptable medical practice by utilizing an anterior surgical approach, from the front and side of the body, to the damaged spinal area rather than a posterior approach from the back. Defendant's expert, Dr. Dunn, testified that, while he personally preferred the posterior approach in cases such as plaintiff's, the anterior approach was an acceptable procedure that did not deviate from acceptable medical standards. Dr. Reed testified

at length describing his reasons for electing the anterior approach to the surgery.

Dr. Fries also found a deviation from acceptable medical practice in the delay between the time of the operation and the decision to do the myelogram to ascertain the cause of the neurological deficit. He was of the opinion that the delay in discovering and removing the blood clot caused permanent injury to the spinal column, resulting in permanent damage to the lower extremities. On the other hand, the defendant's expert found the delay to be proper medical procedure.

The jury, after hearing all the expert testimony and other evidence presented during a five-day trial, returned a verdict finding no negligence on the part of the defendant, Dr. Reed. This appeal followed.

Plaintiff asserts four issues on appeal, which all overlap and intertwine, being essentially based upon certain statements made by defense counsel during closing argument and the trial court's rulings on objections to them. The controlling issues are whether the statements were improper argument and, if so, whether reversible error occurred. The statements deemed objectionable by the plaintiff occurred during the summation of defense counsel's argument. The record of defense counsel's closing argument reads in pertinent part:

"One last comment on some of the evidence you heard, and that is, is you've heard that only a few orthopedic surgeons in each community tackle these kinds of complicated spine cases. Doctor Reed in 1984 was the only one at either one of our two local hospitals that did so, and that remains true today. *This case I'm sure points out to you the reason why only a few do and only a few answer those kinds of calls.*

"MR. KANCEL: Objection, Your Honor. Unfair argument.

"MR. McCAMISH: What?

"THE COURT: Overruled. It is closing argument.

"MR. McCAMISH: Okay. And that that reason is, is that these are terrible injuries, these spine injuries. They have many, many, many less than favorable outcomes. They have many, many, as you've heard everyone describe potentials for complications. *If we hold Doctor Reed responsible and other doctors responsible who do their best and who make their best judgments as they treat these kinds of cases, no one will answer these calls.* Doctor Reed and I—I want to tell you—take a minute to say some personal things. Doctor Reed and I agree in our belief in the system. And we appreciate all of your patience over the course of these four days.

"As I told you when we started, I didn't think this was going to be an easy case, and I don't think it is. It's not simple. It's not uncomplicated. We are willing to rely on your folks to weigh the evidence, use your judgment, and find that there was no malpractice in this case. Thank you all.

"THE COURT: Mr. Kancel, you have nineteen minutes. I will give you a two minute warning. (At the Bench conference between Court and counsel, outside the hearing of the jury.)

"MR. KANCEL: Your Honor, I make an objection to the argument that Mr. McCamish was making in the vein that to allow this kind of a case, there would be no one to treat the—the injury, and I want to make quite clear that my objection is to that argument, and I move for a mistrial at this time on that basis. To me that's as bad as an insurance case saying that their decision will raise insurance rates. What Mr. McCamish is doing is asking—is threatening the Court—the jury that if they don't find Doctor Reed free of negligence in this case, there will be no one to treat them. I think that is an unfair argument, and as far as instruction or instruction from the Court or in lieu thereof, I ask for a mistrial.

"THE COURT: Your motion will be overruled. Of course, you may answer—during your argument, you may answer his arguments." (Emphasis added.)

Plaintiff contends that the italicized statements in the oral argument were improper and in essence denied plaintiff a fair trial.

Defendant asserts that the statements were not improper and that plaintiff's objections to the two alleged improper remarks were insufficient and not timely. Defendant contends that the objection of "unfair argument" was not sufficiently specific. K.S.A. 60-246 provides:

"**Objections to rulings.** Formal exceptions to rulings or orders of the court are unnecessary. It is sufficient that a party, at the time the ruling or order of the court is made or sought, makes known to the court the action which he or she desires the court to take or his or her objection to the action of the court and his or her grounds therefor."

While the objection certainly could have been more specific, we conclude the objection was sufficient to preserve the issue for appeal.

Next, defendant argues that there was no contemporaneous objection to the second statement of counsel to the effect that if the doctors are to be held responsible, there will be no one to treat or answer difficult spinal injury cases. Defense counsel was obviously in the closing words of his final argument. As soon as he had completed the argument, plaintiff's counsel asked to ap-

proach the bench, articulated the objection, and moved for an admonishment to the jury or a mistrial. We conclude the objection was sufficiently contemporaneous to preserve review. *Cf. State v. Netherton,* 128 Kan. 564, 573-75, 279 Pac. 19 (1929). Here, plaintiff's counsel made appropriate objections at the earliest possible time without interrupting defense counsel in the closing seconds of his argument.

We now turn to the merits of the plaintiff's appeal. Plaintiff has asserted four arguments based upon the allegedly improper argument of defense counsel: reference to extraneous matters was improper and prejudicial and constituted gross misconduct; the trial court erred in refusing to admonish the jury or, in lieu thereof, in failing to grant a mistrial; plaintiff was denied a fair and impartial trial; and the likelihood is great that the improper remarks of counsel changed the result of the verdict. Defense counsel argues that his comments were not improper and constituted proper argument based upon the evidence in the case. While it is true there was some brief testimony about the limited number of doctors who treat severe spinal injuries, the availability of treatment in this case or in the future had absolutely no bearing upon the issue in this case of whether Dr. Reed was guilty of medical malpractice.

In *State v. Kelly,* 209 Kan. 699, Syl. ¶ 4, 498 P.2d 87 (1972), this court held:

"In argument to the jury the prosecutor should not use statements calculated to inflame the passions or prejudices of the jury. He should refrain from argument which would divert the jury from its duty to decide the case on the evidence, by injecting issues broader than the guilt or innocence of the accused under the controlling law, *or by making predictions of the consequences of the jury's verdict."* (Emphasis added.)

Plaintiff, in his brief, states his position as follows:

"It is plaintiff's contention that the above-quoted argument of defense counsel was a bold and calculated threat, warning, and intimidation of the jury. It was purposefully made to inflame and prejudice the jury to return a verdict for the defendant based, not upon the evidence, but upon defense counsel's 'belief' and improper appeal to each individual juror's fear that should he or his family need a doctor to 'treat these kinds of cases' in the future, one will not be available—if the jury returns a verdict against Dr. Reed *and other doctors."*

We agree that the statements of counsel were inappropriate, had no bearing upon the issues before the jury, and were objectionable, and that the court should have admonished the jury to disregard the remarks. Experienced defense counsel should not have made the statements which were irrelevant to the issues and cannot be considered proper closing argument. However, even though the argument was improper it does not, in our opinion, constitute reversible error.

In *Kleibrink v. Missouri-Kansas-Texas Railroad Co.*, 224 Kan. 437, 443, 581 P.2d 372 (1978), this court stated:

"Remarks of counsel are reversible error when, because of them, the parties have not had a fair trial. [Citation omitted]. Of course, the trial court is in a better position than an appellate court to determine whether the verdict resulted from asserted misconduct of counsel or from passion or prejudice, and ordinarily its conclusion in the matter will not be disturbed. [Citations omitted.]"

To constitute reversible error it must be shown that there is a likelihood that the improper remarks changed the result of the trial. *Walters v. Hitchcock*, 237 Kan. 31, 33, 697 P.2d 847 (1985).

This case was thoroughly tried by experienced and respected trial counsel for both parties. The central issue was whether Dr. Reed committed malpractice in his choice of approach to the surgery and in his decision not to perform a myelogram until three or four days after surgery. The trial spanned several days and the transcripts consist of over 600 pages of testimony. The experts for both parties were extremely well respected and no question is raised regarding their qualifications to testify and give their opinions on the issues in this case. The jurors heard all the testimony and the questions asked by them during their deliberations demonstrated they clearly understood the issues.

Among the instructions to the jury was the following:

"Opening statements are made by the attorneys to acquaint you with the facts they expect to prove. Closing arguments, which you are about to hear, are made by the attorneys to discuss the facts and circumstances in this case, and should be confined to the evidence and to reasonable inferences to be drawn therefrom. Neither opening statements nor closing arguments are evidence, and any statement or argument made by the attorneys which is not based on the evidence should be disregarded."

We conclude, after a careful review of the entire record, that the remarks of counsel, while inappropriate and erroneous, did not deprive the plaintiff of a fair trial, and that there is no likelihood they changed the result of the trial. Under such circumstances, the statements in closing argument do not constitute reversible error.

The judgment is affirmed.