No. 30,555.

OLIVE MANN, *Appellant*, v. W. K. MANN, *Appellee*.

(15 P. 2d 478.)

Opinion filed November 5, 1932.

*James A. McDermott, Richard B. McDermott,* both of Winfield, and *Edward J. Fleming,* of Tulsa, Okla., for the appellant.

*L. D. Moore, H. O. Janicke,* both of Winfield, and *J. T. Boyle,* of Arkansas City, for the appellee.

The opinion of the court was delivered by

SLOAN, J.: This was an action for divorce, division of property, and alimony. The plaintiff's right to a divorce and the custody of the child were not contested. The contest between the parties was on the division of the property and alimony. A divorce was granted to the plaintiff and she was given the care and custody of the child, aged ten years. The defendant was directed to pay $45 a month to the plaintiff for the support of the child, commencing August 1, 1931, and continuing until the further order of the court. Certain property was set apart to the plaintiff, and the defendant was ordered to pay to the plaintiff the sum of $4,820 within two years from the date of the decree. The plaintiff appeals from the judgment of the court dividing the property.

The parties were married March 14, 1917. The appellant was at that time seventeen years of age and the appellee twenty-one. Ap-

pellee claimed that at the time of the marriage he was worth $80,000, and that the appellant brought no property to the marriage. Appellee was engaged in the oil business, and it is claimed that in 1921 he met with reverses and was practically insolvent; that afterwards, in 1924, he met with success and accumulated considerable property. The appellant received $500 from her grandmother shortly after their marriage, and later an inheritance of $885. This money was used by appellee in his oil operations. The appellant estimated the net value of appellee's property at the time of the trial to be $49,779.38, while the appellee estimated the value to be $30,250. A large volume of testimony was offered on both sides as to the value of the property and how it was accumulated. The court did not make any special findings, and the estimates above suggested are taken from the evidence of the respective parties. The trial court set aside to the appellant the home, household goods and an automobile, which are estimated to be of the value of $4,330; required the appellee to pay the taxes on the home, amounting to $250, and an attorney fee of $500, and in addition thereto a money judgment in favor of the appellant in the amount of $4,820.

Among the property involved in the litigation are three city properties in the city of Arkansas City, one of which is the homestead, and a farm in Hamilton county. The city properties were estimated by both parties to be of the value of $10,000, and the farm $1,400. The legal title to this real estate, at the time of the trial, was in the name of the appellant. It is the contention of the appellant that this real estate was her separate property, acquired in her own right, and should be set apart to her. The appellant alleges in her petition "that some of said property, both real and personal, is owned in the name of the plaintiff, other of it owned in the name of the defendant, but howsoever the title may be held it and all of said property of every kind owned by them or either of them was accumulated by their joint efforts." The appellant, when questioned on this subject, testified as follows:

"Q. Do you have any property that you claim you own now, you own sole and separate property? A. I have property that I figure is part mine because I have worked with him.

"Q. That wasn't the question. Do you have any property now that you claim as your sole and separate property? A. I figure that land is really mine, the 160 acres in Hamilton county, at Syracuse; he told me I might have that for security. He told me that I might have that for security on my $500; I also figure that a part interest in the gas property is mine because my inheritance went into it.

"Q. I was wondering if you had any kind of property of any kind or character now, individual property, not what we call community property, but your own absolutely and not involved in your controversy with your husband. Do you own any property in which your husband has no interest whatsoever? A. No; only as I told you about the gas property and the land out there."

The appellee testified as follows:

"Q. Did you deed that to your wife? A. I did.

"Q. Why? A. I deeded it—I am in the oil business; I always told Mrs. Mann if I went broke in the oil business I would come and live with her; if I made good in the oil business she could live with me—I had property in my wife's name."

This is all of the testimony we are able to find that throws much light on the ownership of this property. It appears that at one time deeds were made from the appellant to the appellee, but these deeds were later destroyed. If the appellant acquired the property, either by purchase or gift, the court had no power other than to set it aside to her. This is mandatory under the statute. (R. S. 60-1511; *Davison v. Davison*, 125 Kan. 807, 266 Pac. 650.) The difficulty with the appellant's contention is that she does not claim the property, but makes the definite allegation in the petition that it is community property and that she holds only the legal title thereto. Her testimony supports the petition, and we cannot say that the husband's testimony is inconsistent with this position. In any event, at most, the testimony presented a question of fact which was in the province of the trial court to decide, and it apparently took the view that it was community property. The case of *Davison v. Davison*, supra, states the law, but the appellant did not bring herself within the law as established by this case.

The title to the Hamilton county farm which the appellee deeded to the appellant presents an additional question. The appellant received a gift from her grandmother of $500, which, according to the undisputed testimony, she loaned to the appellee. The loan was evidenced by the appellee's note. The appellant testified that the deed to the farm was to secure the note. This created at least a lien on the land. There is no evidence that the note was paid. The court attempted in the judgment entered to cancel this note. The note was the separate property of the appellant, and the trial court, under the circumstances of this case, exceeded its jurisdiction when it attempted to cancel the note. (R. S. 60-1511.)

It is next contended that the court erred in not setting apart to

the appellant the $885, which, she contends, was invested by the appellee in a gas lease. We are unable to say from the record that this was not taken into consideration by the court in arriving at its judgment. The appellant is, of course, entitled to the return of this money, and the court had the power to render such judgment as would account for it.

It is next contended by the appellant that the court abused its discretion in making the division of the property. As we have already said, no special findings were made, and, for the purpose of considering this question, we shall take the estimated value of the property made by the appellee. According to his testimony he was worth $30,250 on the day of the trial. The appellant received $9,150 out of this sum. It has been repeatedly held by this court that the trial court has a wide discretion in the division of property and allowing alimony between husband and wife. (*Newton v. Newton,* 127 Kan. 624, 274 Pac. 247, and cases there cited.) On the other hand, it is judicial discretion and is subject to review by this court, and if, under the circumstances of the particular case, it is clearly unreasonable and inadequate this court will set the judgment aside. (*Flautt v. Flautt,* 126 Kan. 21, 266 Pac. 746.) The appellant married the appellee when she was seventeen years of age, and there is nothing in the record to indicate that she has been anything other than a faithful wife. She has borne two children, one of which is deceased. In times of adversity she graciously accepted the burdens imposed and aided the appellee in the struggle back to prosperity. On the other hand, the husband is in middle life, is apparently a shrewd business man and capable of earning a good income. He does not deny the charges of infidelity made against him but admits that he is guilty of perpetrating a gross wrong against his wife. Assuming that his estimate of the value of his property is correct and that she is entirely wrong in her estimate of value, the allowance made to her of less than one-third of the value of his estate is plainly inequitable and inadequate. While the division of the property is largely in the discretion of the court such discretion cannot be used arbitrarily. There is no rule of law for determining what proportion of the husband's estate should be set apart to the wife, but this court has suggested that there are many cases in which one-half of the estate would be a proper allowance. (*Flautt v. Flautt,* supra.) It is the duty of the court, in determining the amount to be allowed the wife, to take into con-

sideration the conduct of the parties, the needs of the wife, the earning capacity of the husband, the amount of property owned by the parties and how and when it was acquired. When this rule is applied to the evidence disclosed in the record we are brought to the conclusion that the trial court abused the discretion vested in it by statute, and that the court should make a more substantial allowance to the appellant.

The judgment is reversed, and a new trial ordered.