No. 47,233

Jackie M. Wofford, *Appellant*, v. Elizabeth (Betty) L. Wofford, *Appellee.*

(520 P. 2d 1278)

Opinion filed April 6, 1974.

*John E. Bohannon*, of Topeka, argued the cause and was on the brief for the appellant.

*Richard R. Funk*, of Colmery, McClure, Funk & Hannah, of Topeka, argued the cause and was on the brief for the appellee.

The opinion of the court was delivered by

Fontron, J.: In 1953 Mr. and Mrs. Wofford were married in Valley Falls, Kansas. Three children were born to the couple. Incompatibility plagued their relationship during the final years of their union and in 1971 Jackie, or Jack, the husband and plaintiff herein, filed action for divorce. Elizabeth, or Betty, the wife, cross petitioned for relief.

The case was tried in the Shawnee district court in March, 1972, before the Honorable Adrian J. Allen, and in April, the court awarded Jack and Betty a divorce, each from the other, on grounds of incompatibility. Custody of the two younger children, ages 14 and 11, was placed with Betty, while custody of the older son, then 16 and since killed in an accident, went to his father. The court set child support payments at $40 per week payable to Betty, divided the couple's property, awarded no alimony and required Jack to pay the debts. Mr. Wofford has filed an appeal with respect to the division of property and the allocation of debts. His position, essentially, is that his wife received all the property and he received all the debts.

Let us briefly examine the property, all of which was accumulated during the marriage years, since neither party brought assets into the marriage. Mrs. Wofford was awarded the equity in a 60-acre

farm in Jefferson County. The record reveals that at the time of trial, an offer of $31,000 had been received for this acreage, which was subject to a mortgage balance of $15,200. We were given to understand on oral argument that the land has since been sold for approximately $32,000; that the mortgage has been paid in full; and that the balance is being held by the bank awaiting the outcome of this litigation. Mrs. Wofford was also awarded an $800 balance due under a real estate contract, a 1961 Ford car purchased for $50, household goods, furnishings and appliances of undisclosed value and personal effects.

To Mr. Wofford went a 1965 Oldsmobile with a broken piston—value undisclosed, farm machinery and equipment including two trucks, federal and state tax refunds amounting to some $1055, a $1500 paid-up life insurance policy, cash in the bank and accounts receivable of $195 and his personal belongings. A tabulation of the indebtedness bestowed on Mr. Wofford runs to $14,826.66, according to his testimony. This includes $12,000 owed on the farm machinery which he valued at $6,000. Mrs. Wofford testified the machinery would not be worth $12,000, but gave no specific figure. There was no independent testimony as to the value of the farm equipment.

Mr. Wofford, disenchanted with the court's decision, filed two motions; one for a new trial and the other for alteration or modification of the decree, both motions being directed toward the property division. The motions were overruled, but Judge Allen prepared a letter memorandum which gives us an insight into the reasoning which went into his judgment. The memorandum reads in pertinent part:

"The trial court is commonly required to solve economic problems resulting from divorce when the facts virtually defy a satisfactory solution. This is particularly true when, as in this case, there are children born of the marriage, debts beyond the capabilities of the parties to handle, relatively limited assets and incomes and health problems. Nevertheless, in such a case, the Court must decide the economic matters involved in order to make provision for care of minor children, maintenance of the parties, and divide the property. In a case such as this, a decision as to any one of these issues cannot be made intelligently without regard to the others.

"From the evidence in this case, there are doubtless many different methods in which the very difficult economic problems inevitably resulting to both parties from this divorce could be resolved by a Court. For example, the Court could award the parties undivided interest in various assets and require the plaintiff to pay sums to the defendant for her support. This would possibly be a better solution than the one finally adopted by the Court and is a solu-

tion that this Court considered. The evidence certainly lends support to such a solution and such would have been a more typical way to resolve the case as an easy out for the Court.

"The Court felt at the time the decision was made, and still does, that the judgment entered by the Court presents the best way to resolve the various serious economic problems resulting from this divorce."

From the standpoint expressed by the trial court in its memorandum, the division of property, unbalanced though it might be if considered alone, is not as harsh as it might appear at first blush. The court was obviously appraising the dire economic position of this family from all angles: limited assets; income and earning capacities; health problems; indebtedness; provision for minor children; and employment possibilities.

To recite a few background facts which were before the court: Jack was employed as a laborer by Casson Construction Company. His gross earnings from the job in 1971 were $10,214, but he had losses from farm operations for that year of some $4450. During the first three months of 1972 his gross earnings amounted to $1803 with a net of $1347, his hourly wage being $5.65. Betty was temporarily out of work at the time of trial but had been employed in civil service positions, and more recently had worked a couple of years as a medical secretary. She was able to earn around $375 per month. On four occasions she had been referred to the Topeka State Hospital and had spent several months there. Her mental health was improved at the time of trial.

The issue is whether the court abused its discretion in dividing the property. To an onlooker the division would appear lopsided until he considered the entire financial picture, including the absence of alimony. We view the situation here as quite similar to that presented in *Lavery v. Lavery*, 208 Kan. 603, 492 P. 2d 1311. In that case the wife was awarded no alimony but was awarded the home "as a division of property and in lieu of alimony" as was recited in the journal entry. While no such recital expressly appears in Judge Allen's memorandum letter, it appears to us he had the thought in mind that the property awarded to Mrs. Wofford would suffice to serve as alimony as well.

Little need be said concerning the role of judicial discretion in actions of this kind. When it comes to matters relating to alimony and property division arising in divorce actions, the trial court is possessed of wide discretion, and its judgment in respect to awarding alimony and dividing property will not be disturbed

on appeal in the absence of a clear abuse of discretion. (See 2 Hatcher's Kansas Digest [Rev. Ed.] Divorce & Separation, § 50.)

We cannot say, in viewing as a whole, the economic climate encompassing the Wofford family, the relative earning capacities of Jack and Betty, their respective health backgrounds and the custodial responsibilities of each, that an abuse of discretion has been shown. This we believe is so, even though the total indebtedness to be borne by Mr. Wofford is indeed high for a working man, assuming his estimate of the value of the farm equipment is anywhere near correct and that family loans remain unforgiven.

Our cases indicate there is no fixed rule for determining an appropriate division of family property or what proportion of a husband's estate should be allowed as alimony. (*Preston v. Preston,* 193 Kan. 379, 394 P. 2d 43.) Whether members of this court individually or collectively might have decided matters differently in view of the existing indebtedness, is quite beside the point, provided the arrangements made by the court ultimately do not appear inequitable under subsisting conditions. The trial judge had the opportunity to hear and observe the witnesses at first hand, which gave him no mean advantage. (*Hoppe v. Hoppe,* 181 Kan. 428, 312 P. 2d 215), and we cannot stigmatize his judgment as exceeding the bounds of judicial discretion.

The judgment of the trial court is affirmed.