No. 47,285

Eileen M. Almquist, *Appellant,* v. Kenneth T. Almquist, *Appellee.*

(522 P. 2d 383)

Opinion filed May 11, 1974.

*Robert L. Marietta,* of Marietta and Kellogg, of Salina, argued the cause and was on the brief for the appellant.

*Philip R. Shaffer*, of Salina, argued the cause, and *Frank C. Norton*, also of Salina, was on the brief for the appellee.

The opinion of the court was delivered by

FOTH, C.: In this divorce action we are concerned primarily with the division of property ordered by the trial court. The plaintiff wife was granted a divorce on the grounds of incompatibility on October 4, 1972. Further hearings were held on the property aspect of the suit, and on January 29, 1973, the court entered its order: of a net marital estate of $176,707.86 the court awarded the husband $143,581.61 and the wife. $33,126.25. She appeals.

The parties were married in 1936, when she was nineteen and he twenty. Neither brought any property to the marriage, but they set up housekeeping at the edge of Assaria, Kansas in a house belonging to Kenneth's parents. It was located on 76½ acres which over the years formed the core of his farming operation. Some seventeen years later, in 1953, the senior Almquists deeded the property to their son; the parties continued to reside there for almost twenty years more. During the marriage the Almquists raised four children, who by 1972 were all grown, married, and living away from the family home.

At the time of the divorce Kenneth Almquist was 57 years old, Eileen 55. He, in addition to farming, had for some time held a federal civil service job at Schilling Manor, near Salina. He did maintenance work, specializing in electrical wiring, and earned around $9,000 a year. She had helped with the farm work, and in recent years had tried her hand at a series of unskilled jobs, earning at most $1.00 per hour. Her current venture was in the real estate business, where she was a licensed salesperson with a Salina agency. She supplemented her uncertain income from this source by cooking evening meals for a Salina family and noon meals for a Salina doctor. Her culinary skills brought in $39 a week; her real estate activities had grossed $50 in the sixty days before trial.

Mrs. Almquist nevertheless declined alimony, saying "I think I can make a go of it in my real estate. I'm going to try if I can. I would just as soon have this considered anyway into the property settlement."

The property division, with agreed values, went like this:

To Kenneth Almquist:

| | | |
|---|---:|---:|
| Corporate stock | $3,250.00 | |
| Cattle, farm machinery, crops | 45,650.00 | |
| Car, cash, guns | 1,328.00 | |
| Life insurance, retirement fund | 6,356.00 | |
| | | 56,584.00 |
| The home place | 45,500.00 | |
| Interest in mother's estate | 70,349.00 | |
| | | 115,849.00 |
| | | 172,433.00 |
| Less, judgment to Eileen | | (28,250.00) |
| | | 144,183.00 |

**To Eileen Almquist:**

| | | |
|---|---:|---:|
| Corporate stock | 158.25 | |
| Cattle | 1,501.00 | |
| Car, cash, household goods | 3,217.00 | |
| | | 4,876.25 |
| Plus, judgment from Kenneth | | 28,250.00 |
| | | 33,126.25 |

In addition, Kenneth was ordered to pay the family debts of $601.29 and $1,395.00 to apply on her attorney fees (he had paid $200 in a prior abortive proceeding). Of the "equalizing" judgment of $28,250, he was to pay $1,250 at once to defray her cost of moving from the family home and to "assist her in making adjustments occasioned by the move." The $27,000 balance was to be paid $15,000 on March 31, 1973, and $4,000 annually on March 31st thereafter until paid in full.

The record reflects no articulated reasons behind the trial court's decision, but we may glean some of the judge's thinking by examining the result he reached. The wife was awarded five cows, three calves and three shares of A. T. & T. stock, all purchased by her from her own earnings. She also received her savings account, her life insurance, one of the parties' two cars, and the household goods. The husband was awarded the property incidental to his farming operations, his insurance, his retirement fund, his guns. He, too, received a car, and corporate stock which had originated in gifts from his parents. Thus each received, by and large, the items having some personal attachment or which he or she was accustomed to using.

The key items omitted in the foregoing summary are the home place and Kenneth's inheritance, having a total value of $115,849.

Apart from these two items Kenneth received $56,584 in jointly accumulated property, against which he was to pay $28,250, or just about one-half, in cash. If this were all, Mrs. Almquist would obviously have little ground for complaint.

This, of course, is not all. Mrs. Almquist's chief complaint goes to the fact that in making the property division the trial court apparently first set aside to her husband the home place and his interest in his mother's estate, and apportioned only the balance. In so doing, she says, the trial court abused its discretion.

The rules applicable to our review in such a case are easy to state but difficult to apply. "The district court is vested with wide discretion in adjusting the financial obligations of the parties in a divorce action and its exercise of that discretion will not be disturbed on appeal in the absence of a showing of clear abuse." (*Stayton v. Stayton,* 211 Kan. 560, 506 P. 2d 1172, Syl. ¶ 1.) One seeking to establish an abuse of discretion assumes a heavy burden, for "If reasonable men could differ as to the propriety of the action taken by the trial court then it cannot be said that the trial court abused its discretion." (Id., p. 562.) On the other hand, "The discretion vested in the trial court must be exercised in whole-hearted good faith and be guided by the statutes, not by the court's private opinion of what the statute ought to be. Where the exercise of discretion is arbitrary and not judicial, and the judgment is inequitable, it will be set aside." (*St. Clair v. St. Clair,* 211 Kan. 468, 507 P. 2d 206, Syl. ¶ 6.)

The governing statute, referred to in *St. Clair,* is K. S. A. 60-1610 (*b*) (as amended):

"The decree shall divide the real and personal property of the parties, whether owned by either spouse prior to marriage, acquired by either spouse in his or her own right after marriage, or acquired by their joint efforts, in a just and reasonable manner, either by a division of the property in kind, or by setting the same or a part thereof over to one of the spouses and requiring either to pay such sum as may be just and proper, or by ordering a sale of the same under such conditions as the court may prescribe and dividing the proceeds of such sale."

We commented on the changes in our divorce law wrought by the 1963 enactment of that statute in *Zeller v. Zeller,* 195 Kan. 452, 407 P. 2d 478:

"The significant change in the law regarding division of property is that the court is no longer required to set aside to the wife the separate property which she brought to the marriage or acquired with her own funds after the marriage.

The court now is given authority to divide all of the property owned by the parties, regardless of the source or manner in which acquired, in a just and reasonable manner." (p. 459.)

No change was effected as to the husband's individual property. It is subject to division under the new law as it was under the old. The trial court, then, was not *required* to set aside to the husband his separate property before dividing the marital estate. The question remains, was it proper to do so? Put another way, was it proper for the court to give the weight it obviously did to the source of these two assets?

Under the pre-1963 law the source of marital property was one of several factors to be considered, *i. e.,* the court should take into consideration "the conduct of the parties, the needs of the wife, the earning capacity of the husband, the amount of the property owned by the parties and *how and when it was acquired.*" (*Mann v. Mann,* 136 Kan. 331, 335, 15 P. 2d 478. Emphasis added. See also, *Walno v. Walno,* 164 Kan. 620, 192 P. 2d 165.) The new law made no substantial change in these factors which should influence the exercise of the trial court's discretion. In dividing property and fixing alimony under the new law we have said it should still take into account "the ages of the parties, the duration of the marriage, the property owned by the parties [and] their future earning capacities." (*Zeller v. Zeller,* supra, 195 Kan. at 460) and also *"the time, source and manner of acquisition of property,* and family ties and obligations." (*Saint v. Saint,* 196 Kan. 330, 335, 411 P. 2d 683. Emphasis added.)

Applying these factors to the case at bar, we first find that Kenneth Almquist's interest in his mother's estate came into being when she died on May 3, 1971. Her estate was still being administered when the divorce hearings were held. Considering not only the source of this asset but the time it was acquired, we cannot say that it should necessarily have been subject to division.

The home place, however, presents a different picture. The parties had made their home there for 36 years. Eileen Almquist went there as a teen-aged bride, and leaves there as a matron in late middle age. They raised their children to maturity there. The actual deed to Kenneth from his parents was almost 20 years old. This property, as we see it, was part and parcel of the family assets, regardless of its source.

Mrs. Almquist, it will be recalled, did not ask for alimony.

Rather, she said, she would prefer the court to take the entire marital picture into account in making the division of property.

The relationship between alimony and property division under our present code has presented troublesome questions to the bench and bar of this state. Frequently tax considerations have induced the parties to fix outsized alimony payments which are intended to compensate the wife for an otherwise inadequate share of the property. We have recognized that parties have a right to make such an agreement, but have held that they are bound to the legal consequences of the device they have chosen. Thus "alimony" payments are terminable on remarriage, even where intended to equalize property. *Drummond v. Drummond,* 209 Kan. 86, 495 P. 2d 994; *Beck v. Beck,* 208 Kan. 148, 490 P. 2d 628. They cannot be converted into a property division by an order *nunc pro tunc. Wallace v. Wallace,* 214 Kan. 344, 520 P. 2d 1221.

On the other hand, we have approved property divisions where the wife was awarded the lion's share "in lieu of alimony." *Lavery v. Lavery,* 208 Kan. 603, 492 P. 2d 1311; *Wofford v. Wofford,* 214 Kan. 450, 520 P. 2d 1278. In the latter case what appeared to be a hopelessly lopsided division in favor of the wife was found to be balanced by the omission of any award of alimony. The case also involved support of three minor children, and the trial court had observed that "In a case such as this, a decision as to any one of these issues cannot be made intelligently without regard to the others." This court approved that approach, characterizing it as "appraising the . . . economic position of this family from all angles."

We do not mean to suggest that the line between alimony and property division drawn in *Drummond* and *Beck* should be blurred. We do think that neither can be fixed by itself, without giving appropriate consideration to the other. Mrs. Almquist was entitled to expect from the court that appropriate weight be given to *all* the factors mentioned in such cases as *Zeller* and *Saint,* and also to the lack of alimony. While she was optimistic about her prospects of self-support, her after-tax earnings from all sources for the first nine months of 1972 were only about $200 per month. About half of that came from her real estate work, and the balance from her cooking. Without the homestead to reside in, merely housing herself in Salina will make serious inroads into her income. It seems

apparent that in order to survive she will be required to dip into her share of the property. This factor should, we think, have weighed more heavily in the balancing of the parties' overall financial position.

As to the home place, its source was but one factor to be considered, and in this court's opinion a minor one. The trial court, on the other hand, apparently believed that its "manner of acquisition" was the sole and controlling factor. In this we believe it erred. Mrs. Almquist was entitled to an equitable portion of *all* property which might fairly be deemed part of the family estate. This would include, under the facts in this case, the family home. Any other result would, in our opinion, fall short of the statutory demand that the property settlement be "just and reasonable."

We are not inclined to disturb the allocation of the property itself to the husband, but believe that an additional $20,000 should be added to the equalizing judgment in favor of the wife.

We have examined the other contentions made by Mrs. Almquist and find them to be without merit. Whether the award for moving expenses should be over and above the balance of the property settlement goes merely to the total amount she should be awarded, and is covered by what has previously been said. The same goes for the award for attorney fees. The trial court's award was "to apply on the attorney fees claimed" by her attorney. It did not purport to represent the reasonable value of counsel's services. The amount was doubtless considered in conjunction with the total amount of the property settlement, and we cannot say it represents an abuse of discretion.

Finally, Mr. Almquist suggests in his brief that this appeal should be dismissed because the appellant's designation of the record was not timely filed. A motion on these grounds was made to the court below, which overruled it. Implicit in this action was a finding that appellant had not abandoned her appeal and that her delinquency was due to excusable neglect. (Rule No. 6 (*p*), 211 Kan. xxix.) Appellee also filed a motion in this court, based on the same grounds, which was denied on October 15, 1973, with no leave to renew on the merits being granted. Nothing is presented in the brief to cause us to alter our previous conclusion.

The judgment is reversed as to the money judgment in favor of the plaintiff wife, and the case is remanded to the district court with directions to render a judgment in her favor in the amount of

$48,250. Such judgment shall be payable over a period not to exceed ten years on terms to be determined by the trial court, after hearing if necessary, such terms to be no less advantageous to plaintiff than those of the original judgment. In all other respects the judgment is affirmed.

APPROVED BY THE COURT.

FROMME, J., dissenting. I agree with the various statements of law cited in the majority opinion. Especially do I agree with the statement, "The district court is vested with wide discretion in adjusting the financial obligations of the parties and its exercise of that discretion will not be disturbed on appeal in the absence of a showing of clear abuse." However, after carefully reviewing the record I cannot conclude, as does the majority, that the trial court made the division of property under the mistaken belief that the manner of its acquisition was the controlling factor considered in the ultimate division of the property. This conclusion by the majority is based solely upon the apparent unequal division of the property between the parties. It does not take into consideration the other factors bearing upon the question.

Assuming that the trial court was laboring under this erroneous belief, the proper function of this appellate court should be to reverse the judgment and remand the case with instructions to the trial court to correct its erroneous belief and enter a proper judgment based upon all factors bearing upon the question. The impropriety and difficulties arising from the action of this appellate court in entering a substitute judgment for that of the trial court is apparent in the disposition of the case made by the majority opinion. The final cash judgment in favor of the wife is entered for $48,250.00 but, being uncertain as to how such judgment could be collected and enforced, the court in the opinion remands the case to the trial court for it to decide on the terms of payment "after a hearing, if necessary". I believe this court has ignored the rules of law stated in the opinion as well as its role as an appellate court. Therefore, I register my dissent.

KAUL, J, (dissenting): Applying the rule stated in paragraph 1 of the syllabus, the record in this case, in my opinion, does not show a clear abuse of discretion necessitating reversal of the judgment on appeal. To find such abuse of discretion here it is neces-

sary to attribute to the trial court a state of mind which the record does not warrant. I would affirm the judgment below.

SCHROEDER, J., joins in the foregoing dissenting opinion.