NOT DESIGNATED FOR PUBLICATION

No. 116,904

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In Matter of the Marriage of:

CHRISTY JO BALLINGER,
*Appellee*,

and

JOHN GLENN BALLINGER,
*Appellant*.

MEMORANDUM OPINION

Appeal from Montgomery District Court; GARY R. HOUSE, judge. Opinion filed October 6, 2017. Affirmed.

*Daniel M. Reynolds*, of Emert Chubb Reynolds, LLC, of Independence, for appellant.

*Curt T. Schneider*, of Schneider Law Office, of Coffeyville, for appellee.

Before MALONE, P.J., PIERRON and BRUNS, JJ.

*Per Curiam*:  In this divorce action, John Ballinger appeals from the district court's award of spousal maintenance to Christy Ballinger—his former wife—and from the district court's division of real property. In addition, John appeals from the district court's order requiring that he pay half of his daughters' parochial school tuition. We conclude that the district court did not abuse its discretion by ordering John to pay spousal maintenance nor in its valuation of the marital home. Likewise, we conclude that the district court did not abuse its discretion in setting aside real estate to Christy that she received as a gift from her father. Finally, we conclude that the district did not abuse its

1

discretion in ordering that John and Christy each pay half of the tuition at the parochial school their daughters attend. Thus, we affirm.

FACTS

John and Christy Ballinger were married on April 13, 2002. During the marriage, two daughters were born—the first in 2003 and the second in 2004. On June 27, 2003, Christy's father and stepmother conveyed 40 acres of land to John and Christy so that they could build a marital home. On May 22, 2013, Christy's father and stepmother conveyed 160 acres of land solely to Christy. There was no consideration given for the conveyance and Christy's father reserved a life estate in the real estate.

A divorce action was filed on November 10, 2015. Ultimately, both parties requested a divorce on the grounds of incompatibility. To their credit, John and Christy entered into a parenting agreement that the district court approved. The district court granted the parties joint legal custody of their daughters, with Christy having residency. In addition, John and Christy agreed upon a parenting time schedule. Furthermore, John and Christy agreed that their daughters should continue to attend Zion Lutheran School in Independence.

On June 20, 2016, the district court held a final hearing on the divorce. At the hearing, John and Christy presented evidence regarding their respective financial situations and other issues related to their marriage. Specifically, Christy testified about her interest in the 160-acre property given to her by her father. Christy indicated that the marital home was worth $151,570—plus an unspecified additional amount for agricultural use—based on a county tax assessment. At the time of the hearing, the marital home was subject to a mortgage with a remaining debt of approximately $70,000. Christy also testified regarding the parties' other assets and debts.

2

Christy testified that she had recently left a job in Wichita for one that allowed her to work closer to home. It appears from the record that Christy was earning an annual salary of approximately $92,000 at her job in Wichita and was earning an annual salary of approximately $90,000 at her new job. Moreover, there is evidence in the record that Christy had earned as much as $99,349.21—including bonuses—in her prior position. According to Christy, she voluntarily left her job in Wichita after the divorce action had been filed in order to spend more time with her daughters. Christy further testified that she had two retirement accounts with a total approximate value of $185,630.11.

John testified that he makes $128,000 per year, including annual bonuses. He further testified the 160-acre property that Christy was receiving from her father is an active farm. According to John, the 160 acres were probably worth around $320,000. However, he did not present any testimony nor did he offer any evidence of the present value of Christy's interest in the 160 acres.

John asked the district court to set aside his retirement account to him as part of his property—evidently, in exchange for the district court setting aside the 160 acres aside to Christy. Although it appears the retirement account had approximately $247,780, John testified that there was no way to assign the account a present value due to its contingent nature. John also offered an appraisal of the 40-acre tract of property on which the marital home was located. According to the appraisal, the property was worth approximately $350,000. John also testified regarding the other assets and debts of the parties.

Evidently, the district court initially entered a decree of divorce on July 28, 2016. The next day, the district court issued a 13-page amended decree of divorce by memorandum decision, granting the divorce; adopting John and Christy's agreement regarding child custody, residency, and parenting time; directing Christy's attorney to prepare a child support order reflecting her income to be $90,000 per year and John's to

3

be $128,000 per year; ordering that John and Christy each pay one-half of the tuition for the continued education of their daughters at Zion Lutheran School; allowing each party to claim one child as a deduction for income tax purposes; dividing the assets and debts of the parties; and ordering John to pay Christy spousal maintenance in the amount of $633 a month for 54 months.

The district court attached a separate itemization setting forth the specifics of the district court's division of property and debt to the memorandum decision. Based on the district court's calculations, the court ordered Christy to pay John an equalization payment in the amount of $52,449. However, the district court also ordered that Christy should receive a credit or offset in the amount of $34,182—which represented the amount of maintenance John would have to pay over the period of 54 months—to reduce the net equalization payment to $18,267.

On August 25, 2016, John filed a motion to alter or amend the district court's divorce decree in which he raised numerous issues:

- that Christy failed to establish a financial "need" and, as such should not be awarded any spousal maintenance;
- that an income of $99,000 should have been imputed to Christy for the purposes of calculating child support and any spousal maintenance awarded;
- that any spousal maintenance that may be awarded should terminate upon Christy's death, remarriage, or cohabitation;
- that because his obligation to pay spousal maintenance may end prior to the expiration of 54 months, it should not be treated as a credit or offset against Christy's obligation to make an equalization payment to him;
- that the district court should not have reduced the appraiser's valuation of the 40-acres on which the marital home is located by 10%;

4

- that although he had agreed that the 160-acre property received by Christy from her father should be awarded to her, it should have been calculated in the division of property and debts;
- that any spousal maintenance he was ordered to pay should be considered as income to Christy for the purposes of calculating child support;
- that Christy should not have been awarded one-half of his retirement account prorated for the length of the marriage; and,
- that although he and Christy had agreed that their daughters should continue to attend Zion Lutheran School, the district court should not have ordered him to pay one-half of their tuition because this is already factored into the direct expenses reflected in the Child Support Guidelines.

On September 23, 2016, the district court held a hearing on the motion to alter or amend. At the hearing, council for John and Christy presented oral arguments. In addition, several exhibits were admitted into evidence. At the conclusion of the hearing, the district court took the motion to alter or amend under advisement. Several weeks later, on October 24, 2016, the district court issued a 10-page memorandum order in which it granted John's motion to alter or amend in part and denied it in part.

After reviewing the factors to be considered in determining whether spousal maintenance should be awarded, the district court noted that it had also considered the standard of living during the marriage as well as the comparative earning capacities of the parties in deciding to award spousal maintenance in this case. Moreover, the district court found that there is a difference in the incomes of the parties of approximately $38,000 a year. In addition, the district court noted that Christy was responsible for the $79,000 mortgage incurred by the parties on the marital home, in addition to the debt on a motor vehicle assigned to her. Furthermore, the district court found that because Christy's father has kept a life estate interest in the 160-acre property, she had no right to receive income

5

from the real estate during the lifetime of her father. Thus, the district court determined that its award of spousal maintenance was appropriate.

Notwithstanding, the district court agreed with John's position that his obligation to pay spousal maintenance should terminate in the event of Christy's death, remarriage, or cohabitation. The district court also agreed that, as John's obligation to pay spousal maintenance could terminate early, the payments should be made monthly and not used as a credit or offset against Christy's obligation to make an equalization payment to him. In addition, the district court agreed with John that the spousal maintenance payments received by Christy should be treated as income in calculating child support.

Regarding Christy's change in employment, the district court found that she had found a new job so that she would be at home with the parties' children during the week rather than driving to Wichita for work. Although the district court recognized that the change in employment resulted in a reduction in Christy's income, it concluded that accepting a new job closer to home is in the best interests of the children. Thus, the district court rejected John's request that it impute Christy's former income to her for the purposes of calculating child support or spousal maintenance.

Turning to the value of the 40-acres that the marital home is located upon, the district court noted that it had spent considerable time in attempting to arrive at a fair value and did not feel compelled to readdress the issue. We pause to note that in the amended decree of divorce by memorandum decision, the district court had considered the county appraiser's value of the house and land, an appraisal performed by a certified residential real property appraiser, and its own experience. In doing so, the district court concluded the value the property to be $268,900.

Next, the district court addressed the issue of the 160 acres that Christy received from her father during the marriage. The district court reiterated that it would not

6

consider this real property in arriving at the division of assets and debts. Evidently, the district court had believed that John had stipulated the 160 acres out of consideration in the property and debt division. However, John argued in his motion to amend that he intended only to stipulate that Christy should receive this real estate—not that the district court should treat it as separate property. Nevertheless, the district court noted that Christy's father had deeded the 160 acres to his daughter and that he had reserved a life estate in the real property. As such, Christy had no right to income from the property until after her father's death.

The district court also addressed John's contention that it should not have awarded Christy one-half of the value of his retirement account prorated for the length of the marriage. As the district court noted, although the parties' other pensions or retirement accounts are included in the division of property and debts, John did not come forward with evidence of the present value of his retirement account. Accordingly, the district court concluded that it was fair and equitable to simply divide the pension for the prorated period between April 13, 2002, and the date of the filing of the decree of divorce on July 28, 2016.

Finally, the district court considered the issue of whether the parties should each pay one-half of the tuition and other expenses to continue to send their daughters to Zion Lutheran School. At the outset, the district court found that the parties had agreed to send their two daughters to the school. Moreover, the district court found that the parochial school "is considerably more expensive than public school." The district court rejected John's argument that he was already paying for the parochial school expenses because they are included as part of the "direct expenses" already calculated into the Child Support Guidelines. Specifically, the district court found that expenses to send the children to Zion Lutheran School exceeded the usual and ordinary expenses normally incurred by parents who send their children to public school.

7

On November 21, 2016, John timely filed this appeal. The district court subsequently entered a child support order on January 12, 2017, requiring John to pay $1,830 per month. Unfortunately, although the order is in the record, we do not find a child support worksheet in the record on appeal—which makes our review more difficult. We granted the motion to continue oral argument filed by Christy on July 28, 2017. Ultimately, the parties presented oral arguments to this court on August 30, 2017, and this case was deemed to be submitted for ruling.

ANALYSIS

*Issues Presented*

On appeal, John presents five issues for our consideration. First, whether the district court erred in awarding Christy spousal maintenance. Second, whether the district court erred in determining the value of the marital residence. Third, whether the district court erred in not considering the 160 acres Christy received from her father in the division of property and debt. Fourth, whether the district court erred in ordering the parties to share the expense of sending their daughters to Zion Lutheran School. Fifth, whether the district court erred in failing to impute income to Christy based on her voluntary change of employment.

*Spousal Maintenance*

An award of spousal maintenance is governed by K.S.A. 2016 Supp. 23-2901 et seq. Specifically, K.S.A. 2016 Supp. 23-2902 provides that a district court "may award to either party an allowance for future support denominated as maintenance, in an amount the court finds to be fair, just and equitable under all circumstances." See *In re Marriage of Cline*, 17 Kan. App. 2d 230, 234, 840 P.2d 1198 (1992) (district courts must comply with the statutes authorizing payment of maintenance). In determining whether to award spousal maintenance as well as in determining the amount of maintenance to be awarded,

8

the district court has wide discretion. *In re Marriage of Vandenberg*, 43 Kan. App. 2d 697, 706-07, 229 P.3d 1187 (2010). Accordingly, we are not to disturb the judgment of the district court regarding spousal maintenance unless there has been a clear abuse of discretion. *In re Marriage of Day,* 31 Kan. App. 2d 746, 758, 74 P.3d 46 (2003).

A judicial action constitutes an abuse of discretion if (1) no reasonable person would take the view adopted by the district court; (2) the action is based on an error of law; or (3) the action is based on an error of fact. *Wiles v. American Family Life Assurance Co.*, 302 Kan. 66, 74, 350 P.3d 1071 (2015); see *In re Marriage of Hair*, 40 Kan. App. 2d 475, 483-84, 193 P.3d 504 (2008). If reasonable persons could differ as to the propriety of the action taken by the district court and there is no mistake of law, it cannot be said that there has been an abuse of discretion. *In re Marriage* of *Bradley*, 282 Kan. 1, 7, 137 P.3d 1030 (2006). Furthermore, the party asserting that the district court abused its discretion bears the burden of showing such abuse. *In re Marriage of Larson*, 257 Kan. 456, 463-64, 894 P.2d 809 (1995).

The purpose of spousal maintenance is to provide for the future support of the divorced spouse. Generally, the amount of maintenance is based on the needs of one of the parties and the ability of the other party to pay. *Hair*, 40 Kan. App. 2d at 484 (citing *Carlton v. Carlton*, 217 Kan. 681, 681, 538 P.2d 727 [1975]). In addition, a district court may consider such things as the parties' "standard of living during the marriage and comparative earning capacity of each spouse." 2 Elrod, Kansas Law and Practice: Kansas Family Law § 10:24 (2016-2017 ed.).

In *Williams v. Williams*, 219 Kan. 303, 306, 548 P.2d 794 (1976), the Kansas Supreme Court set out factors that a district court should take into consideration in determining whether to award maintenance, including:  (1) the age of the parties; (2) the parties' present and prospective earning capabilities; (3) the length of the marriage; (4) the property owned by the parties; (5) the parties' needs; (6) the time, source, and manner

9

of acquisition of property; (7) family ties and obligations; and (8) the parties' overall financial situation. We note that these factors are identical to those set forth in *Day*, 31 Kan. App. 2d at 758 and in 2 Elrod, Kansas Law and Practice: Kansas Family Law § 10.24 (2016-2017 ed.), which were both cited by the district court in this case. Consequently, we conclude that the district court applied the correct law related to spousal maintenance.

Here, John's primary argument is that Christy does not have a "need" for spousal maintenance. It is important to recognize that "the parties' needs" is only one of many factors that a district court should take into consideration in determining whether to award spousal maintenance and, if so, in what amount. Furthermore, the failure of a district court to analyze every factor in detail in a particular case is not reversible error if the overall record on appeal can support a decision on maintenance. Instead, "[w]hen the district court's findings supporting maintenance are supported by the evidence, this court will not second guess the district court's decision." *In re Marriage of Hair*, 40 Kan. App. 2d at 486.

Based on our review of the record in this case, we find that the district court considered all of the evidence presented by the parties and made a reasonable decision based on that evidence. In light of the age of the parties, the length of the marriage, the lifestyle of the parties during the marriage, the disparity of income between the parties, the property awarded to each party, and the amount of debt to be paid by the parties, we cannot say that it was outside the realm of reason for the district court to award spousal maintenance in this case. Although we may or may not have reached the same conclusion as the district court had we been the finders of fact, we find no abuse of discretion because the evidence supporting the divorce decree supports the district court's award of spousal maintenance. Thus, we affirm the district court's award of spousal maintenance.

*Property Division*

A district court's division of property in a divorce action is governed by K.S.A. 2016 Supp. 23-2801 et. seq. A district court has broad discretion in adjusting property rights of parties involved in divorce actions. On appeal, we review the record to determine whether there has been an abuse of discretion. *In re Marriage of Wherrell*, 274 Kan. 984, 986, 58 P.3d 734 (2002.) Where the district court made findings of fact, a reviewing court applies the substantial competent evidence test to the factual findings. *Wherrell*, 274 Kan. at 987. We are not to reweigh the evidence or determine the credibility of witnesses. *In re Estate of Farr*, 274 Kan. 51, 68, 49 P.3d 415 (2002). As the party asserting that the district court abused its discretion, John bears the burden of showing such abuse. *In re Marriage of Larson*, 257 Kan. 456, 463-64, 894 P.2d 809 (1995).

### a. *Value of the 40-acre Marital Residence*

John contends that the district court's method of determining the value of the 40-acre property that includes the marital home was flawed. Specifically, John argues that the district court improperly relied on the county appraiser's valuation of the property in making its determination. John also argues that it was inappropriate for the district court to reduce the value in the appraisal he submitted by 10%. In response, Christy argues that the district court based its valuation of the property on the conflicting evidence presented by the parties at the final hearing and was within the district court's sound discretion. We agree.

K.S.A. 2016 Supp. 23-2802(c) directs the district court to divide property with consideration to:

"(1) The age of the parties; (2) the duration of the marriage; (3) the property owned by the parties; (4) their present and future earning capacities; (5) the time, source and manner of acquisition of property; (6) family ties and obligations; (7) the allowance of maintenance or lack thereof; (8) dissipation of assets; (9) the tax consequences of the property division upon the respective economic circumstances of the parties; and (10) such other factors as the court considers necessary to make a just and reasonable division of property."

Here, the district court's final valuation for the 40-acre property fell well within the extreme positions as to value taken by the parties. On the one hand, Christy presented the county appraiser's valuation. In addition to the house and immediately surrounding property that the county appraiser valued at $151,570 for tax purposes, the district court took into consideration the agricultural value of the surrounding land. On the other hand, John offered the report of a certified appraiser—who John evidently retained without advising him of the purpose of the appraisal—who estimated the value of the land and house to be approximately $350,000. In addition, the district court took into consideration—based on its experience—that such appraisals are often high in order to allow a homeowner to qualify for a larger loan.

Generally, the values assigned by a district court should be within the range of evidence presented by the parties. *In Re Marriage of Schwien*, 17 Kan. App. 2d 498, 509, 839 P.2d 541 (1992). Here, after weighing the conflicting evidence, the district court concluded that a fair valuation of the 40-acre property including the marital home was $268,900. This amount was approximately $43,000 above the total value placed on the real property and home by Christy and was approximately $81,000 lower than the value placed on the property by John. Thus, as the district court's value is within the range of the evidence, we cannot say that the value placed on the 40-acres upon which the marital home is located was unreasonable.

12

John suggests that it was inappropriate for the district court to consider the county appraiser's valuation for tax purposes. In support of this argument, he cites *In re Marriage of Horvath*, No. 104,739, 2011 WL 2801560, at *3-4 (Kan. App. 2011) (unpublished opinion). However, we do not find *Horvath* to be supportive of this position. In *Horvath*, a panel of our court rejected an argument that the valuation of real property *must* come from the county taxation assessment. 2011 WL 2801560, at *3-4. *Horvath* does not stand for the proposition that a district court is somehow barred from considering a county appraiser's valuation for tax purposes. Furthermore, in Kansas, county tax appraisals "often give the parties a place of beginning for determining the value of residential real estate." 2 Elrod, Kansas Law and Practice:  Kansas Family Law § 10.9 (2016-2017 ed.)

John next argues that the district court "essentially ignored the significance of a certified appraisal." However, John cites no authority about why an appraisal performed by a certified appraiser must be favored over any other evidence on the value of real property. The district court's role, as the trier of fact, was to determine the weight to give to the evidence presented at trial—including the appraisal and other evidence relating to the valuation of the real property. While the above modification process may seem arbitrary, the district court remained within its wide discretion. As noted above, as long as the district court's valuation remains within the range found within the evidence before the district court, we are not inclined to disturb the ruling on appeal. Because the value of $268,900 placed on the 40-acre piece of real property by the district court is between the values placed on the property by Christy and John, we conclude that there has been no abuse of discretion.

b.  *Treatment of 160 Acres from Christy's Father*

John also contends that the district court erred by setting aside to Christy her interest in the 160-acre property deeded to her—subject to a life estate—by her father.

13

Although John does not object to the district court awarding Christy her interest in the 160 acres, he asserts that the district court should have included it as marital property in determining the division of property and assets. As stated previously, the district court has broad discretion in adjusting the property rights of parties involved in a divorce action, and its exercise of that discretion will not be disturbed on appeal absent a clear showing of abuse. *In re Marriage of Wherrell,* 274 Kan. at 986-87.

Under K.S.A. 2016 Supp. 23-2802(a), the district court "shall divide the real and personal property of the parties . . . whether owned by either spouse prior to marriage, acquired by either spouse in the spouse's own right after marriage or acquired by the spouses' joint efforts." When a district court divides property in a divorce action, it is to consider:

> "(1) The age of the parties; (2) the duration of the marriage; (3) the property owned by the parties; (4) their present and future earning capacities; (5) the *time, source and manner of acquisition of property*; (6) family ties and obligations; (7) the allowance of maintenance or lack thereof; (8) dissipation of assets; (9) the tax consequences of the property division upon the respective economic circumstances of the parties; and (10) such other factors as the court considers necessary to make a just and reasonable division of property." (Emphasis added.) K.S.A. 2016 Supp. 23-2802(c).

Although each divorcing spouse has an ownership interest in all marital property, a district court has the discretion to make a division of property in any manner that is just and reasonable. In other words, the district court is only required to make a fair and equitable division of the property. *McCain v. McCain*, 219 Kan. 780, 787, 549 P.2d 896 (1976). The district court is not required to make an *equal* division of marital property. *In re Marriage of Vandenberg*, 43 Kan. App. 2d at 715.

It is not an abuse of discretion for a district court to take into account how the parties acquired the marital property when making an equitable distribution of property.

14

In fact, "the time, source and manner of acquisition of property" is one of the factors that is expressly set forth in K.S.A. 2016 Supp. 23-2802(c) that a district court is to consider in dividing marital property. Clearly, a district court is not required to set aside "separate property"—which includes property brought into the marriage by one of the parties, property acquired with a party's own funds during the marriage, and property received by a party from a family member by gift or inheritance—to a particular party. However, it is not an abuse of discretion for a district court to restore property to a party that was acquired from his or her family by gift or inheritance. *Almquist v. Almquist*, 214 Kan. 788, 792, 522 P.2d 383 (1974); *In re Marriage of Hair*, 40 Kan. App. 2d at 482-83.

We note that it is a common practice in a number of judicial districts in Kansas to set aside inherited or gifted property from a party's family member to that party. 1 Elrod, Kansas Law and Practice: Kansas Family Law, § 4.6 (2016-2017 ed.). In fact, it is a recommended practice in both the Shawnee County Family Guidelines and in the Johnson County Family Law Guidelines. Shawnee County District Court, Family Law Guidelines, § 3.03 (2013 ed.); Johnson County Family Law Bench-Bar, Financial Considerations Guidelines, § 1.2 (Dec. 2015 ed.). Although such guidelines do not have the status of law, they have been created by members of the bench and bar who have expertise in family law to assist judges and practitioners in resolving issues that frequently arise in divorce actions. 1 Elrod, Kansas Law and Practice: Kansas Family Law, § 4.6 (2016-2017 ed.).

Here, we do not find that the district court abused its discretion when it set aside the 160 acres to Christy instead of including it in the property division. Based on our review of the record on appeal, we find substantial competent evidence that Christy's father deeded this real property to her as a gift. In addition, it is undisputed that the father retained a life estate in the property. As such, Christy will not have the full use and enjoyment of the real estate until after the death of her father. We also note the absence of any evidence regarding the present value of Christy's interest in the 160 acres.

15

Accordingly, we find that John has not met his burden of proving that the district court erred in setting aside Christy's interest in this real property to her.

*Parochial School Tuition and Expenses*

John next contends that the district court erred in ordering the parties to equally share the tuition and expenses to send their daughters to Zion Lutheran School. It is undisputed that their daughters attended Zion Lutheran School prior to the divorce. Likewise, John and Christy agree that their daughters should continue to attend the school. Rather, John points out that the current version of the Kansas Child Support Guidelines define the term "direct expenses" to include "[a]ll school and school-related expenses including school lunches." Kansas Child Support Guidelines, § II.A.1 (2017 Kan. S. Ct. R. 79). Hence, John argues that the tuition and expenses paid to send the parties' daughters to Zion Lutheran School are already included in "the standard Kansas child support obligation" and, as a result, the district court erred in diving these expenses between the parties equally.

We start our analysis by looking to the plain and unambiguous language of K.S.A. 2016 Supp. 23-3001(a) and (b). These statutory provisions require, in a divorce action, the district court to "make provisions for the support and education of the minor children." K.S.A. 2016 Supp. 23-3001(a). Specifically, the Kansas Legislature has granted district courts the authority to "order the child support and education expenses to be paid by either or both parties for any child less than 18 years of age." K.S.A. 2016 Supp. 23-3001(b). Thus, we conclude that district courts have the statutory authority to address all issues relating both to child support and to the education expenses.

Here, we find that the district court exercised its authority and discretion in a reasonable manner by requiring that John and Christy each pay one-half of the tuition and expenses to continue to send their daughters to Zion Lutheran School. In making this

16

determination, the district court found that the parties had agreed that their daughters should attend the school. Moreover, the district court found that the school "is considerably more expensive than public school." For whatever reason, the record on appeal does not reflect the specific amount of tuition and related expenses to send the children to Zion Lutheran School. However, the parties do not dispute the district court's finding that it is "considerably more expensive than public school" and it appears to be a reasonable conclusion.

Unfortunately, in its memorandum order on respondent's motion to alter or amend, the district court quoted the definition of "extraordinary expenses" from the prior version of the Kansas Child Support Guidelines that were in effect from April 1, 2012 to December 31, 2015. Significantly, the definition of "extraordinary expenses"—which had expressly referred to "the cost of private school"—was removed from the current version of the child support guidelines. Like the child support guidelines that were in effect prior to April 1, 2012, the current version of the child support guidelines do not mention private or parochial schools. Compare Administrative Order No. 261 (2015 Kan. Ct. R. Annot. 111), to Administrative Order No. 287 (2017 Kan. S. Ct. R. 79).

Nevertheless, district courts continue to have the statutory authority to "order the child support and education expenses to be paid by either or both parties for any child less than 18 years of age." K.S.A. 2016 Supp. 23-3001(b). Likewise, although *use* of the child support guidelines is mandatory, "there is a well-established rule that the district court has the ability to deviate from the Guidelines when determining the amount of child support if such deviation is justified in writing in the journal entry." *In re Marriage of Skoczek*, 51 Kan. App. 2d 606, 608, 614, 351 P.3d 1287 (2015) citing *In re Marriage of Thurmond*, 265 Kan. at 716, 962 P.2d 1064; *In re Marriage of VanderVoort*, 39 Kan. App. 2d 724, 732, 185 P.3d 289 (2008). Based on our review of the record on appeal, we conclude that the district court did make appropriate findings to deviate from the child support guidelines to protect the best interests of John and Christy's daughters.

17

As this court explained in *Skoczek*:

"These are not computations that must be made with scientific accuracy down to the penny. Rather, they arrive as a result of the application of child support guideline principles and the adaptation of guideline models that result in an equitable award. Each case is different. Each parent's circumstances are unique. All children's needs differ. The judicial eye and hand must fill in the final blanks, not a computer program." 51 Kan. App. 2d at 613.

As indicated above, it appears that the district court adopted a final child support worksheet submitted by the parties after the docketing of this appeal. However, the child support worksheet is not included in the record on appeal. Thus, we are at a loss to know how the form was filled out or where the tuition and related expenses for Zion Lutheran School were taken into consideration.

However, we do have the orders issued by the district court relating to the allocation of the parochial school expenses. Although the district court quoted the definition of "extraordinary expenses" from the 2012 version of the child support guidelines, we find that it still made adequate findings to support the decision to equally divide the tuition and related expenses between John and Christy for the continued education of their daughters at Zion Lutheran School. In its memorandum order on respondent's motion to alter or amend, the district court expressly found that "the parties have previously determined they feel it [is] in the children's best interests to attend this private school." As noted above, the district court also found that the Zion Lutheran School "is considerably more expensive than public school."

"Without a doubt, the district court is in the best position to make findings on the best interests of the minor children." *Skoczek*, 51 Kan. App. 2d at 607, citing *In re Marriage of Rayman*, 273 Kan. 996, 999, 47 P.3d 413 (2002). As such, we do not have any reason to question—and John does not appear to challenge—the district court's

18

finding that Zion Lutheran School "is considerably more expensive than public schools" in the area. Rather, John argues that "direct expenses" in the current child support guidelines already account for the expense of attending private and parochial school.

We agree that the child support schedules already factor in many school expenses. This fact is reflected in the Kansas Supreme Court Child Support Guidelines Advisory Committee, Report to the Kansas Supreme Court from the Kansas Supreme Court Child Support Guidelines Advisory Committee with Final Recommendation to the Kansas Child Support Guidelines (August 31, 2015). This would include typical school expenses—such as lunch and extracurricular activity fees—that are incurred by students regardless of whether they attend public, private, or parochial school. However, the Advisory Committee Report (at page 8) also continues to recognize that "Kansas judges may deviate from the basic child support obligation and apply one or more 'adjustments' to increase or decrease one or more parties' child support obligations."

The Advisory Committee Report also points out that 45 C.F.R. §302.56(h)(l) (2017) requires states to "consider economic data on the cost of raising children" in determining appropriate child support amounts. In particular, the Advisory Committee Report indicates that the Kansas Child Support Guidelines Committee looks to data from the United States Department of Agriculture (USDA) Consumer Expenditure Survey—in addition to other resources—for guidance. In reviewing the USDA's 2015 Report on Expenditures on Children by Families (at page 7), we note that it includes this statement: "For families with private school tuition, child care and education expenses are likely higher than those reported here."

In Kansas, district courts have traditionally had the discretion to allocate the tuition of private or parochial education between parents in a divorce action as part of their authority under K.S.A. 2016 Supp. 23-3001(a) and (b). We do not find the fact that the current Child Support Guidelines do not include a definition of "extraordinary

19

expenses" to prohibit a district court's discretion to allocate the tuition of private or parochial education between the parents in a divorce action. See *In re Marriage of Kunzle*, No. 96,332, 2007 WL 3146683, at *8 (Kan. App. 2007) (unpublished opinion) (no abuse of discretion in ordering parents to pay for daughter's tuition at St. Thomas Aquinas in proportion to their respective incomes under 2003 Child Support Guidelines that—similar to the current Guidelines—did not define "extraordinary expenses"). Rather, we find that district courts continue to have the authority to deviate from the Child Support Guidelines so long as they justify any deviation by way of written findings explaining how the deviation is in a child's best interest. *In re Marriage of Skoczek*, 51 Kan. App. 2d at 608.

We find nothing unreasonable about a district court taking into consideration the increased education expenses incurred as a result of parents voluntarily sending their children to a private or parochial school. Moreover, we find that the district court adequately explained its rationale in this case for determining that it was in the best interests of the children for their parents to continue to share the tuition and related expenses in order to attend Zion Lutheran School. As such, we do not find that the district court abused its discretion. Finally, we note that, although the district court could have ordered each party pay a percentage of the expenses in proportion to their respective incomes, as found on the child support worksheet, John actually received a benefit as a result of the district court only requiring him to pay half of these expenses.

*Christy's Reduction in Income*

Finally, John contends that the district court should have calculated his child support and spousal maintenance obligations by imputing to Christy her annual income prior to voluntarily changing her employment. We review a district court's decision to impute or not impute income under an abuse of discretion standard. *In re Marriage of Wiese*, 41 Kan. App. 2d 553, 559, 203 P.3d 59 (2009). Based on our review of the record,

20

we do not find that the district court abused its discretion in refusing to impute income to Christy under the circumstances presented.

"It generally is not appropriate for a court to intervene in personal career choices merely because there has been a divorce." 2 Elrod, Kansas Law and Practice: Kansas Family Law § 14.11, p. 707 (2016-2017 ed.) However, courts have held that parents "may not assume new responsibilities or establish a new business which takes precedence over existing responsibilities to dependents and may impute income based on earning capacity." 2 Elrod, Kansas Law and Practice: Kansas Family Law § 14.11, p. 707-08 (2016-2017 ed.) A parent's good or bad faith may also factor into the imputation analysis. 2 Elrod, Kansas Law and Practice: Kansas Family Law § 14.11, p. 709 (2016-2017 ed.)

Reductions of income during the pendency of a divorce action often attract the attention of the courts. See *In re Marriage of McCollum*, 30 Kan. App. 2d 651, 45 P.3d 398 (2002); *In re Marriage of McNeely*, 15 Kan. App. 2d 762, 815 P.2d 1125 (1991); *In re Marriage of Waggoner*, No. 99,138, 2009 WL 1591394, at *4 (Kan. App. 2009) (unpublished opinion). In each of these cases, however, the change in employment occurred after the parties were divorced. Here, Christy quit her job in Wichita and took a new job in Independence while the divorce action was pending.

Although it appears that Christy's income has been reduced somewhere between $2,000 to $9,000 a year, the district court decided not to impute her prior income to her because it found that she had changed jobs so that she would be closer to her daughters during the week. Specifically, after hearing the evidence, the district court concluded that Christy changed jobs "for the purpose of being available at home for the two children during the work week rather than driving to Wichita for part of the work week." Moreover, the district court pointed out that the parties had agreed that it was in the best interests of their daughters for Christy to have primary residency. Thus, we conclude that

21

the district court's decision was reasonable and supported by the evidence presented at the final hearing.

Affirmed.